THE STATE, THE HUDSON TELEPHONE COMPANY, PROSE-CUTOR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY.

A common council cannot revoke a designation of the streets in which a telegraph company may place their poles, given under the provisions of the eighth section of "An act to incorporate and regulate telegraph companies" (*Rev.*, *p.* 1174), when the company has conformed to the condition upon which the designation was made, and has expended money in placing poles upon the designated streets.

This writ brings up an ordinance to repeal an ordinance entitled "An ordinance to authorize the Hudson Telephone

Company to erect posts or poles in certain streets of Jersey City."

Argued at November Term, 1886, before Justices REED, MAGIE and PARKER.

For the plaintiffs, *Vredenburgh & Garretson.*

For the defendants, *R. B. Seymour.*

The opinion of the court was delivered by

REED, J.    The prosecutors are a corporation by reason of a certificate filed under the provisions of an act entitled "An act to incorporate and regulate telegraph companies" contained in the *Rev.*, p. 1174, and the supplement thereto, to be found in the *Pamph. L.* 1881, p. 201.

The eighth section of the original act is as follows : "Any telegraph company organized by virtue of this act shall have full power to use the public roads or highways in the state on the line of their route for the purposes of erecting posts or poles on the same to suspend wires and other fixtures, upon first obtaining consent, in writing, of the owner of the soil ; provided, however, no posts or poles shall be erected on any street of any incorporated city or town without first obtaining from the incorporated city or town a designation of the streets in which the same shall be placed and the manner of placing the same.

In accordance with these provisions an ordinance was passed by the common council of Jersey City and approved by the mayor April 1st, 1884.    The ordinance gave the company permission to erect posts and poles and to lay an underground cable in certain streets or portions of several streets.    It contained conditions that no post should be erected in front of any building so as to interfere with the approach to the entrance of said building, nor without the permission of the property owner ; that the company should conform to provisions of an ordinance concerning telegraph poles in the

public street; that they should not interfere with gas, water or sewer pipes, and that before they commenced to excavate for the purpose of laying cable they should give a bond conditioned that the company would comply with all the conditions named in the ordinance, and save the city harmless from such acts as might injure third persons. These are, briefly stated, some of the conditions contained in the said ordinance.

It appears from the evidence taken in the cause that the company proceeded to place poles along the route marked out by the ordinance. They had placed from thirty-five to forty-five poles, at an expense of about $10 a pole, and had expended other moneys in and about the erection of the poles.

Then was passed the ordinance brought up before us, which repeals the ordinance which confers permission to place the poles as above mentioned.

I am of the opinion that as a general rule a designation of streets by a city gives the company an irrevocable right to use the streets so designated for the purposes indicated in the statute. Certainly, after the expenditure of money in the erection of poles, made in reliance upon the municipal designation, the company obtains a vested right of which they cannot be stripped by a subsequent revocation of such designation.

The notion that a corporation which, under provisions similar to the present act, has, upon the strength of a permission to use a certain route, spent thousands of dollars in laying railway tracks or subterranean cables, or in erecting posts and stretching wires, is at the mercy of the city authorities continually and entirely, is not to be entertained for a moment.

A view that the rights of the corporation are of so unsubstantial a character is opposed to all judicial sentiment, from the Dartmouth College case to the present time. *State, Britton, pros.*, v. *Blake*, 6 *Vroom* 208, and cases cited on page 215.

The power to repeal, suspend and alter charters contained in section 6 of the act concerning corporations (*Rev., p.* 178), does not reach the exercise of the authority attempted by the common council. No provision is contained in the act under which the prosecutors were incorporated which confers upon

a municipality the power to revoke a permission once granted. The grant of the franchise to this company was subject only to a repeal or alteration by the legislature, and when that corporation had acquired vested rights in the mode designated by their charter, it certainly was not in the power of a common council to strip them of any right so acquired.

It was undoubtedly competent for the common council to couple with the permission such reasonable conditions as the occupancy of a public street by a telephone company's posts and wires would suggest. And without such conditions the erection and maintenance of appliances of the business of the company would be subject to the reasonable control of municipal by-laws. *Dillon on Mun. Corp.*, §§ 555, 558, 575.

But that the common council has the power, at its mere will, to annul the act which has legalized the occupation of the streets, and so leave the company's property impressed with the character of a nuisance, which can be at once abated and their business thus destroyed, I cannot admit.

The power of a common council to revoke its permission given, by statutory authority, to the location of a railroad in the streets of a city was expressly denied in the case of the *Peoples' Passenger Railway Co.* v. *Baldwin*, reported in 37 *Leg. Int.* 424, and in the case of the *Brooklyn Central R. R. Co.* v. *Brooklyn City R. R. Co.*, 32 *Barb.* 358.

I also understand the rule laid down in *Commonwealth* v. *Boston*, 97 *Mass.* 555, in reference to the right of municipal authorities to proceed against telegraph poles in a street as nuisances, after permission to so place them has once been granted, is in the same direction.

It is noticeable that there was no failure, in the present case, by the company to perform any required condition precedent to their occupation of the streets. The bond which they were to give was only to protect the city in case the company should excavate and lay cable wires, which, if they could, under their charter, do at all, they have not done. There is no pretension that they failed in any other particular to con-

form to the requirements embodied in the ordinance conferring the permission.

The power to repeal the present ordinance is also claimed to exist under the authority over streets as well as the power to repeal ordinances, conferred upon the common council of Jersey City by its charter. But it is clear that the power to remove obstructions from streets is confined to nuisances, and any object which has a legal right in the street is beyond the power of the common council. So long as the company violate no reasonable regulation of the common council, their property has as much right in the streets as vehicles and street cars.

And in respect to the power to repeal ordinances, it is a general power which exists outside of the express powers conferred by charter, by reason of the right to pass ordinances. This general power cannot be invoked to sustain the rescission of an act done by virtue of other legislation, which act is, by reason of the object, the latter legislation, or by the acquisition of vested rights an exception to the general rule which permits legislative bodies to rescind resolutions or repeal laws.

We have determined that this act of giving permission (which, by the by, could have been conferred by resolution as well as by ordinance) was one which, at least, after acceptance and expenditure of money under it, was irrevocable. It was therefore removed from the operation of the general rule.

It is further suggested, rather than urged, in favor of the repealing ordinance, that the prosecutors were enjoined, previous to the passage of this ordinance, from proceeding further in using their telephone.

Without stopping to decide to what extent a permanent inability on the part of the company to pursue the business for the transaction of which it was incorporated, would justify the city in compelling the removal of its poles and wires, it is enough, now, to remark that there is nothing before us to show the character of the injunction orders of the court. There is no legal evidence even of the existence of an injunc-

tion, much less of the scope or permanent character of the prohibition.

I am of the opinion that the ordinance brought up should be adjudged illegal. Let it be set aside.