## THE UNITED RAILWAYS AND ELECTRIC COMPANY OF BALTIMORE vs. THOMAS G. HAYES, MAYOR OF BALTIMORE CITY, ET AL.

*Street Railways—Ordinance Granting Right to Lay Tracks Within Limited Time After Street is Paved—Partial Macadamizing of Street Not a Paving—Effect of New City Charter on Existing Street Railway Ordinance.*

An ordinance of the Mayor and City Council of Baltimore authorized a street railway company to lay its tracks on certain streets, but it was also ordained that the work should be begun within six months and completed within twelve months after the approval of the ordinance, otherwise the privilege granted should be void. A proviso in the ordinance declared that in case any of the designated streets should not be then graded and paved, the time for the completion of the railway should be extended for twelve months. One of the streets named was not, and has not been, graded and paved in the same manner as other city streets, but between the points covered by the ordinance it was graded and macadamized with broken stone about twenty or thirty feet in the middle, the remainder of the bed of the street being a dirt road. Such macadamizing of the street was not the kind of paving required by the City Code, Art. 47, sec. 39. *Held,* that the street in question had not been paved within the meaning of said ordinance, and the right of the railway company to lay its tracks thereon had not been forfeited because of the expiration of the time first limited.

After the passage of the above mentioned ordinance authorizing the railway company to lay its tracks on certain streets, and before the work was done the new charter of the city of Baltimore (Act of 1898, ch. 123) was enacted, and this provides that railway companies shall pay for any privilege to lay tracks on the streets of the city, and that the municipality shall have the right to purchase the franchises at the expiration of a certain period. But the charter also enacts that it shall not be taken to impair any right existing at the time of its enactment, and that ordinances

, then in force and not inconsistent therewith shall be continued. *Held*, that the right under the ordinance to lay the tracks was a right existing when the new charter was passed, and was not affected by anything therein contained.

Appeal from a *pro forma* order of the Superior Court of Baltimore City.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Fielder C. Slingluff* and *Geo. Dobbin Penniman* (with whom was *E. J. D. Cross* on the brief), for the appellant.

*Olin Bryan* (with whom was *Wm. Pinkney Whyte* on the brief), for the appellee.

FOWLER, J., delivered the opinion of the Court.

The United Railways and Electric Company of Baltimore City on the 28th August last, under the provisions of the Baltimore Code of 1893, made application to the City Engineer for a permit to tear up and open the bed of Wilkins avenue from Brunswick street westwardly to the present city limits, as shown on the plan submitted with the application "for the purpose of laying its double passenger railway tracks which the City and Suburban Railway Company was authorized to lay by Ordinance No. 34 of the Mayor and City Council of Baltimore, approved April 2nd, 1894." This application was refused by the Mayor and the City Engineer, whereupon the railway company filed a petition in the Superior Court for the writ of *mandamus* requiring the city engineer to issue and the Mayor to approve the permit to said company to lay its tracks as set forth in its application, and as authorized in the ordinance therein mentioned. The case was submitted on petition, answer and agreed statement of facts and by a *pro forma order* the petition was dismissed. The petitioner has appealed.

It is conceded that by various consolidations the petitioner became entitled to all the rights, privileges and franchises granted by Ordinance 150 of 1880, Ordinance No. 40 of 1882,

and Ordinance No. 34 of 1894, but it is contended by the defendants :

1st. That Wilkins avenue had been properly "paved" for such length of time that the petitioner has forfeited all its rights under Ordinance No. 34 and section 11 of Ordinance 150 to construct its tracks, because it has failed to commence the work within six months from the time said avenue was properly graded and paved, and has not completed the work and commenced the regular running of its cars within twelve months after that time ; and 2nd. That Ordinance No. 34 of 1894, has been repealed by section 3 of the Act of 1898, chapter 123, commonly known as the " New City Charter," inasmuch as the provisions of said ordinance, relative to the laying of tracks on that portion of Wilkins avenue from Brunswick street to the city limits, are inconsistent with the provisions of that Act, and are, therefore, repealed by said Act by implication as fully as if said ordinance had been in fact repealed."

We will consider the questions presented by these two propositions in the order in which they are stated above ; but before doing so, it may be well to transcribe the exact language of the ordinances relied on by the defendants to sustain their position.

Section 11 of Ordinance 150 of 1880, reads as follows :

" And be it further enacted, &c., that the said proprietors, &c., their successors and assigns shall commence the work of laying down and constructing the railway tracks, aforesaid, within six months from the approval of this ordinance, and shall complete the said work and commence the regular running of cars within twelve months after the approval hereof, otherwise the rights and privileges herein granted shall be null and void : Provided that the provisions of this section *shall not apply* in case any of the streets hereinbefore named may not have been graded and paved at the time of the approval of this ordinance ; or should any of said streets be undergoing repairs by the city authorities in such manner as would interfere with the laying and constructing of the railway tracks, aforesaid, then the time for the completion of said railways, as herein-

before provided, shall be extended for a period of twelve months
from the completion of such repairs, the tracks of said road,
however, to be laid on such streets or parts of streets, as far
as opened, paved and graded." By Ordinance 34 of 1894, the
City and Suburban Railway Company was authorized to ex-
tend its double track on Wilkins avenue from its terminus, at
that time at Brunswick street, to the city limits as extended
by the Act of 1888, chapter 98.  The title of this ordinance is
"An ordinance supplementary to Ordinance No. 150, approved
October 25th, 1880, and to permit the City and Suburban Rail-
way Company to extend its double tracks of passenger railway
on Wilkins avenue from the present terminus to the city lim-
its."  It was provided by this Ordinance No. 34 that "the
construction, use and enjoyment thereof, be subject to all the
conditions contained in the original ordinance and any supple-
ments thereof heretofore passed."

It is conceded, of course, that section 11 of the original
Ordinance 150, applies to the additional franchise granted by
Ordinance No. 34, namely to extend the double tracks of the
petitioner from the old city limits at Brunswick street to the
new city limits as fixed by the Act of 1888.  But it appears
that the tracks so authorized by Ordinance No. 34 were not
constructed immediately, nor was any application for a permit
to lay them filed with the city engineer until the 28th August
last, and hence the question is presented whether such appli-
cation was made within the time limited by section 11 of Ordi-
nance 150, that is to say that section which provides that the
work of laying the tracks must be commenced within six
months from the approval of the ordinance and must be com-
pleted within twelve months, otherwise the rights and privi-
leges granted would be void.  It was provided, however, that
the provisions of this section should not apply to any streets
therein named which might not have been graded and paved
at the time of the approval of the ordinance.  The narrow
question which the proposition we are now considering in-
volves, is whether under the admitted facts of this case Wil-
kins avenue was graded and paved at the time of the passage

of Ordinance No. 34, that is to say on the 2nd of April, 1894. The contention of the petitioner is that it never was and is not now graded and paved within the meaning of the ordinances in question. By an examination of this agreed statement of facts, we learn that Wilkins avenue, on which the petitioner desires to lay its tracks as set forth in its application to the City Engineer, is an old county road; that from Brunswick street to the city limits "the roadway has been macadamized from twenty to thirty feet in width with broken stone, this work having been done from time to time, as the conditions of the road required. At the present time its condition is that of the average turnpike road *in this vicinity*."

From the bridge westward to within five hundred feet of the southern city limits the roadway is graded from thirty to forty feet wide; to obtain the full width will require a fill of ten to fifteen feet at certain points. * * * "Wilkins avenue from Brunswick street to the southern city limits was graded, shaped up and then macadamized with crushed stone." It thus appears that the avenue was not macadamized its whole width, but that "broken stone" was placed in a strip in the middle to make a solid road for winter, while the remainder of the bed was what is ordinarily termed a dirt road.

In our opinion it is too clear for controversy, that a road or avenue thus macadamized is not "graded and paved" *within the meaning of the city ordinances.* When Ordinance 150, which we are considering was passed, the then City Code, (Art. 47 sec. 39), provided that "all streets, lanes or alleys to be paved shall be paved with rubble stone, or such other stone as the city commissioner shall consider sufficiently durable, the stone to be *not less* than 16 square inches on the surface, except the part between the kerb and the gutter which may be of such smaller size as directed by the City Commissioner, and at least six inches in depth; to be placed upright in a bed of sand or gravel, at least one foot in depth; and the interstices shall be filled up with stone of the size and quality to be prescribed by the City Commissioner." Nor since Ordinance 150 was passed in 1880, has any authority been given

by the city to use macadam for the purpose of "paving" its
streets; but by resolution of the Mayor and City Council No.
67, approved July 2nd, 1897, property holders in the annex
were authorized to improve the roads in front of their prop-
erty either by grading and paving or by gravelling or macad-
amizing them in unimproved or partly improved streets * * *
"in such manner as the majority of the owners * * *
shall agree upon." / Here the two distinct and separate
methods of improving streets are mentioned, and gravel and
macadam appear to be placed in the same class. But in ad-
dition to this; under the city ordinances the cost of "paving"
a street is assessed upon the owners of the abutting property;
and it appears by the agreed statement of facts that the so-
called paving of Wilkins avenue was done by the City Com-
missioner under several resolutions which authorized him to
repair the avenue with "broken stone." The whole cost of
this work was paid for by the city as far as we are informed
by the facts in the record. Certainly there is no claim made
by the defendants that the property owners were ever called
on to pay any part of the expense of the work authorized by
the resolutions we have mentioned. But, as we have said, we
think the question too clear to require further elaboration. In
this connection, however, we may refer to the case of *Leak v.
The City of Philadelphia*, 150 Pa. St. 643, which sustains the
view we have taken. In the opinion of JUDGE WILLSON in the
Court below, which was adopted by the Supreme Court, it is
said: "A clear distinction has been recognized between mere
artificial road bed and a paved road bed. This was expressly
stated in the Act of April 1st, 1864 * * in which it was
provided that upon the petition of a majority of the owners of
the ground on any streets in certain wards not already paved,
councils might direct that the said streets shall be macadam-
ized in a suitable manner, instead of being paved." We have
already pointed out a substantially similar provision in the Balti-
more City Code. Continuing the learned Judge in the case
just cited said: "I do not regard a macadam road as paved in
the meaning of the term as it has been employed in the stat-

utes and ordinances applicable to this city. Such a road is artificial, improved, it may be, but not paved in the technical or natural sense of the word."

II. We will briefly consider the second proposition on which defendants rest their defense, namely, that the third section of the Act of 1898 (the new city charter) repeals the ordinances relied on by the petitioner and by which it claims it is authorized to lay its tracks on Wilkins avenue from Brunswick street to the city limits. By the section referred to it is provided that " all ordinances   *   *   *   now in force and not inconsistent with this Act shall be and they are hereby continued until changed or repealed." But section two of the same Act provides " that this Act shall not affect or impair any right vested or acquired and existing at the time of the passage of said Act and provided that this section shall not be construed to make irrepealable or irrevocable any right which before the passage of this Act was repealable or revocable; nor shall this Act impair, discharge or release any contract, obligation, duty, liability or penalty whatever now existing."

It follows from what we have said in discussing the first proposition that the right to lay the tracks on Wilkins avenue as provided by Ordinance 34 was not forfeited, and if so it was a right existing when the new city charter was passed and adopted by the Legislature. In *Baltimore, Canton and Point Breeze Railway Co.* v. *Latrobe*, 81 Md. 222, we held that the right to lay tracks on streets of Baltimore given by Ordinance 150 was such a clear right as entitles the petitioner to the writ of *mandamus* to compel the issue and approval of a permit. The only question then, is whether the ordinances relied on are inconsistent with the charter of the city and therefore repealed by implication under the provision of the third section thereof, which provides that only ordinances not inconsistent therewith are continued in force. In what respect are those ordinances inconsistent with the new charter? It is true that the latter provides that railway companies now shall pay for any privilege to lay tracks in any of the streets and

that certain other provisions are therein contained giving the city the right to purchase franchises at the expiration of a certain period. But these provisions evidently were intended to apply to the future. This we think is made manifest in view of the second section which provides that the charter shall not affect or impair any right, vested, acquired or existing. Under the new charter the grants of franchises were revocable—and so is the franchise now claimed by the petitioner under the ordinances in existence before the new charter was passed. It was so held in the case of *Lake Roland Elevated Railway Co.* v. *Mayor, &c.*, 77 Md. 381, and, of course is conceded by the petitioner. Reading sections two and three of the new charter together, we think that so far from there being a repeal of the ordinances in question by implication, it is quite obvious that no repeal was contemplated.

> *Order reversed with costs and cause*
> *remanded.*

(Decided January 18th, 1901.)