CITY OF OWENSBORO *v.* CUMBERLAND TELE-PHONE & TELEGRAPH CO.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF KENTUCKY.

No. 244.　Argued April 22, 1913.—Decided June 16, 1913.

Rights conferred by a municipal ordinance on a corporation qualified to conduct a public business come from the State through delegated power to the city.

A municipal ordinance granting to a corporation qualified to carry on a public business, such as a telephone system, the right to use the streets for that purpose, is more than a mere revocable license; it is the granting of a property right, assignable, taxable and alienable, an asset of value and a basis of credit.

Such a grant is one of property rights in perpetuity unless limited in duration by the grant itself or by a limitation imposed by the general law of the State or by the corporate powers of the municipality.

The powers of municipalities of Kentucky to grant licenses in the streets for telephones were not limited in 1889 as to time; and, under a charter provision giving power to regulate streets and alleys, a munic-ipality had ample power to grant a franchise to a telephone company to place and maintain poles and wires thereon.

A corporation is capable of taking a grant of street rights of longer duration than its own corporate existence if the grant expressly inures to the benefit of the grantees, assigns and successors. *St. Clair Turnpike Co.* v. *Illinois*, 96 U. S. 63, distinguished.

A reservation to alter or amend in a municipal ordinance, granting rights in the streets to a corporation to carry on a public utility, as the necessities of the city demand, is simply a reservation of police

control incidental to the unabridgeable police power and does not reserve a right to revoke or repeal the ordinance itself.

While the power to destroy contract rights may be reserved by a municipality in the ordinance granting them, the reservation must be clear and explicit.

An ordinance requiring a telephone corporation to remove from the streets its poles and wires which had been placed there under a former ordinance granting permission so to do without specifying any period, or else pay a rental not prescribed in the original ordinance, *held* unconstitutional under the contract clause of the Federal Constitution. *Greenwood* v. *Freight Co.*, 105 U. S. 13, distinguished.

Where, under the statutes of the State, a corporation formed by consolidation of several previously existing corporations becomes by express terms vested with all the assets of such constituent corporations, rights in the streets under municipal ordinances pass to the new corporation, and such rights are protected against impairment by the contract clause of the Federal Constitution.

Where the judgment itself makes the opinion a part of the record, the bar of the judgment is confined to those questions to which the opinion expressly declares the litigation was limited.

THIS case involves the nature and duration of the right of the Telephone Company to maintain its poles and wires upon the streets of the City of Owensboro. The ordinance under which it, or its predecessors in right, title and property, have maintained a telephone system in the City of Owensboro, was passed on December 4, 1889. Inasmuch as it contains several provisions which require consideration, it is set out in full in the margin.[1]

---

[1] Council Proceedings, Dec. 4th, 1889.
         Minute Book "F," Page 157.

The following ordinance, after being twice read, was enacted by the following vote, to-wit: Ayes, Mess. Baer, Brotherton, Vargason, Cullen, Higdon, Decker, Noes, None. Viz:

Be it ordained by the Mayor and Common Council of Owensboro, Ky.:

That the Cumberland Telephone Company its successors and assigns, is authorized and hereby granted the right to erect and maintain upon the public streets and alleys of said city *any* number of Telephone poles of proper size, straight and shaved, smooth, set plumb and kept erect, and any number of wires thereon with the right to connect such

The grantee under that ordinance at once proceeded to erect its plant and to place its poles and wires upon the streets and it and its successors and assigns have ever since maintained and operated a telephone system. The city

wires with the building when telephone stations are established, provided such poles shall be located and kept so as not to interfere with the travel upon said streets or alleys or the substantial use thereof by the inhabitants of said city.

SEC. 2. That the said Cumberland Telephone Company shall erect only one line of poles on a street except for the length of one block on the street upon which the exchange building may be located, and where the wires of said company enter such exchange building the said company shall have the right to erect and maintain its poles on both sides of such streets and the lowest wire of said telephone company shall not be less than twenty-five feet from the ground, except where such wires enter the exchange building or telephone stations.

Nothing in this ordinance contained shall be construed as an exclusive right to said company to erect and maintain poles upon the streets and alleys of said city, and no obstruction shall be placed by said company to the erection and maintenance of poles by any other person or company. Such company shall enjoy such rights in common with all other persons or companies, to whom said city may see proper to extend the same right.

SEC. 3. The said telephone company shall repair all streets and alleys it may enter upon and use for the purpose herein provided, which by the acts of said company or persons in its employ shall have become injured or damaged or have made unsafe.

All proper precautions and safeguards shall be used to prevent such use from becoming either injurious or annoying to the inhabitants of said city, and should any damage or injury result to any person or property by reason of the erection and maintenance of such poles, or the failure to keep the streets and alleys in repair as herein required, and the said city shall be held liable by reason thereof, such company shall pay all damages and costs resulting therefrom to the parties injured, or to the city if paid by her.

SEC. 4. The rights and privileges hereby granted to said telephone company are upon the terms, and conditions following, viz: That said company shall furnish free of charge one telephone for each engine or hose house, now erected or which may hereafter be erected by said city, one for police head-quarters, and one for the mayor's office

has used the company's poles for the maintenance of its fire alarm service, and has had the benefit of a free public telephone service for municipal purposes.

In January, 1909, the city council passed an ordinance requiring the telephone company to remove from its streets and alleys all of the poles and wires "within a reasonable time after the passage of the ordinance," and upon failure to so remove, the mayor was directed to have them removed. This was, however, subject to a provision, "that said company shall have the right to purchase from the said city a franchise authorizing it to maintain said poles and wires and use same as provided under the laws of the State, upon proper conditions to be prescribed by an ordinance to be passed upon request of said company to the common council of said City."

This bill was filed for the purpose of enjoining the enforcement of this ordinance, the contention being that it was an impairment of the company's contractual property rights in the streets, and, as such, in contravention of the contract and due process clauses of the Constitution of the United States. Upon a final hearing the court below sustained the bill and permanently enjoined the enforcement of the repealing ordinance.

---

making at this time only two such telephones to be furnished by said company for the use of the city, shall be kept in good order for constant use by said company.

Said company shall also allow the city the exclusive use of two feet of one arm on each pole for its fire alarm telegraph; The fire alarm telegraph poles of the city may be used by said company for its wires provided such wires be kept two feet from the said fire alarm telegraph wires, and such poles used by the said telephone company shall be replaced by it when needed.

Sec. 5. All poles of said telephone company shall be set close to the inner side of the sidewalk-curbing.

Sec. 6. This ordinance may be altered or amended as the necessities of the city may demand.

This ordinance shall be in force from and after its passage."

*Mr. R. S. Todd* and *Mr. George W. Jolly* for appellant:

Under the Kentucky Statutes §§ 555 and 556, the consolidation of two or more corporations into one corporation terminates the corporate existence of each constituent corporation at the date of such consolidation. *Shields* v. *Ohio*, 95 U. S. 319, 323.

A grant by a municipality to a telephone company of a right to occupy the streets and alleys of the city, for putting up poles and wires and conducting a telephone business, made under a power to "regulate the streets, alleys and sidewalks, and all repairs thereof," is limited in its duration to the corporate life of the company, under its charter at the time of the grant, where no time is fixed for its duration in the ordinance making the grant. *Street Ry. Co.* v. *Birmingham*, 79 Alabama, 465; *Water Co.* v. *Boise City*, 123 Fed. Rep. 232; *Owensboro* v. *Cumberland Telephone Co.*, 174 Fed. Rep. 739, 752; *Citizens' St. Ry. Co.* v. *Detroit Railway*, 171 U. S. 48; *Railway Co.* v. *Logansport*, 114 Fed. Rep. 688; *Mercantile Trust Co.* v. *Denver*, 161 Fed. Rep. 769, 771; *Oregon Ry. Co.* v. *Oregonian Ry. Co.*, 130 U. S. 26; *Rock Island* v. *Central Telephone Co.*, 132 Ill. App. 248; *Rockwith* v. *State Road Bridge Co.*, 145 Michigan, 455; *Snell* v. *Chicago*, 133 Illinois, 413, 432; *State* v. *Cape Girardeau R. R. Co.*, 207 Missouri, 85; *State* v. *Scott Co. Ry. Co.*, 207 Missouri, 54; *St. Clair Turnpike Co.* v. *Illinois*, 96 U. S. 63; *Toll Roads* v. *People*, 21 Colorado, 429; *Virginia Canon Road Co.* v. *People*, 22 Colorado, 249; *Wyandotte Electric Co.* v. *Wyandotte*, 124 Michigan, 43, 47.

Under the provisions of the act of the legislature of the State of Kentucky creating a new charter for the City of Owensboro, in 1882 and in force when the grant in question was made, the power of amendment and repeal was given and reserved to the city, and the grant to the appellee was necessarily made subject to this power. Section 10, 1 Acts Kentucky, 1881, pp. 817–856; Kentucky Statutes (1909),

§ 570; Kentucky Constitution, § 190; *Gas Co.* v. *Des Moines,* 44 Iowa, 508; *Greenwood* v. *Freight Co.,* 105 U. S. 13; *Griffin* v. *Kentucky Ins. Co.,* 3 Bush (Ky.), 592; *Hayer* v. *Walker,* 128 Kentucky, 1; *Hopkins* v. *Swansea,* 4 M. & W. 621; *City Ry. Co.* v. *Louisville,* 8 Bush, 420; *Presbyterian Church* v. *New York,* 5 Cowan, 532; *Southern Telephone & Telegraph Co.* v. *Richmond,* 98 Fed. Rep. 672; *S. C.,* 103 Fed. Rep. 31; *Stuyvesant* v. *New York,* 7 Cowan, 585; *Vanderbilt* v. *Adams,* 7 Cowan, 349; Cooley's Const. Lim. (5th ed.) 196, 240; Dillon on Mun. Corp. §§ 245–573; 23 Cyc. 1142, and cases cited in note 57.

Power to repeal or modify the ordinance of December 4, 1889, existed not only by the provisions of § 10 of city charter of 1882, but also under the general reservation act of February 14, 1856, carried into Kentucky Statutes as § 1987; it also existed by reason of the acceptance of the present constitution adopted in 1891, by appellee, January 31, 1896, § 3 of which provided that every grant of a franchise, privilege or exemption, shall remain subject to revocation, alteration or amendment.

In the absence of express legislative authorization a municipality cannot make a perpetual grant to the use of the streets and thoroughfares of the city. *Street Ry. Co.* v. *Birmingham,* 79 Alabama, 465; *Street Ry. Co.* v. *Detroit Railway,* 171 U. S. 48; *Railway Co.* v. *Logansport,* 114 Fed. Rep. 688.

Public grants should be construed liberally in favor of the public and strictly against the grantee; nothing passes by implication. *Charles River Bridge Case,* 11 Peters, 420; *Fertilizing Co.* v. *Hyde Park,* 97 U. S. 666; *Greenwood* v. *Freight Co.,* 105 U. S. 13; *Water Company* v. *Knoxville,* 200 U. S. 33; *Minturn* v. *Larue,* 23 Howard, 43, 50; *Oregon Ry. Co.* v. *Oregonian Ry. Co.,* 130 U. S. 26, 30; *Thomas* v. *Railroad Co.,* 101 U. S. 71; *Turnpike Co.* v. *Illinois,* 96 U. S. 63.

Where there has been a previous litigation between the

same parties relative to the same cause of action, the judgment of the court therein places the matter at rest forever between the parties thereto and their privies. Bigelow on Estoppel, 72, 73, 152; Black on Judgments, §§ 720, 731; *Case* v. *Beauregard*, 101 U. S. 688; *Coffey* v. *United States*, 116 U. S. 436; *Davis* v. *McCorkle*, 14 Bush (Ky.), 754; *Frances* v. *Wood*, 81 Kentucky, 22; Freeman on Judgments, §§ 249, 270; *Hanley* v. *Donoghue*, 116 U. S. 6; *Hardwick* v. *Young*, 110 Kentucky, 504; *Henderson* v. *Henderson*, 3 Hare, 115; *Water Co.* v. *Knoxville*, 200 U. S. 33; *Lyon* v. *Perin Mfg. Co.*, 125 U. S. 700; *Martin* v. *Evans*, 85 Maryland, 8; *Rex* v. *Duchess of Kingston*, 20 Howell's St. Tr. 355; Van Fleet on Former Adjudication, §§ 37, 40; *Baker* v. *Cummings*, 181 U. S. 117–124–5; *S. P. R. Co.* v. *United States*, 168 U. S. 48, 49, 50.

It is the judgment or decree of the court that settles the matters in controversy and conclusively fixes the rights of the parties. The opinion of the judge or chancellor giving his reasons therefor, "is no part of the judgment itself." *Durant* v. *Essex Co.*, 7 Wall. 107, 110; *Case* v. *Beauregard*, 101 U. S. 692; Freeman on Judgments, § 249, and cases cited.

*Mr. William L. Granbery*, with whom *Mr. Clarence M. Finn* and *Mr. Hunt Chipley* were on the brief, for appellee.

MR. JUSTICE LURTON, after making the foregoing statement, delivered the opinion of the court.

1. That the right conferred by the ordinance involved is something more than a mere license, is plain. A license has been generally defined as a mere personal privilege to do acts upon the land of the licensor of a temporary character, and revocable at the will of the latter unless, according to some authorities, in the meantime expenditures contemplated by the licensor when the license was given,

have been made.   See *Greenwood Lake & P. J. Railroad* v. *New York &c. Railroad*, 134 N. Y. 435, 440; *Trustees of Southampton* v. *Jessup*, 162 N. Y. 122, 126.

That the grant in the present case was not a mere license is evident from the fact that it was upon its face neither personal, nor for a temporary purpose.   The right conferred came from the State through delegated power to the city.   The grantee was clothed with the franchise to be a corporation and to conduct a public business, which required the use of the streets, that it might have access to the people it was to serve.   Its charges were subject to regulation by law and it was subject to all of the police power of the city.

That an ordinance granting the right to place and maintain upon the streets of a city poles and wires of such a company is the granting of a property right, has been too many times decided by this court to need more than a reference to some of the later cases: *Detroit* v. *Detroit Street Railway Co.*, 184 U. S. 368, 395; *City of Louisville* v. *Cumberland Telephone and Telegraph Co.*, 224 U. S. 649, 661; *Boise Water Co.* v. *Boise City*, opinion just handed down, *post*, p. 84.   As a property right it was assignable, taxable and alienable.   Generally it is an asset of great value to such utility companies and a principal basis for credit.

2. The grant by ordinance to an incorporated telephone company, its successors and assigns, of the right to occupy the streets and alleys of a city with its poles and wires for the necessary conduct of a public telephone business, is a grant of a property right in perpetuity, unless limited in duration by the grant itself or as a consequence of some limitation imposed by the general law of the State, or by the corporate powers of the city making the grant.   *Detroit* v. *Detroit Street Railway, supra; Louisville* v. *Telephone Co., supra; People* v. *O'Brien*, 111 N. Y. 1, 42; *Woodhaven Gas Light Co.* v. *Deehan*, 153 N. Y. 528; *Mobile* v. *L. & N.*

Railroad Co., 84 Alabama, 115; Town of Arcata v. Arcata Railroad Co., 92 California, 639; Hudson Tel. Co. v. Jersey City, 49 N. J. L. 303; Dillon Mun. Corp., 5th ed., § 1265; Nebraska Telephone Co. v. Fremont, 72 Nebraska, 25, 29; Plattsmouth v. Nebraska Tel. Co., 80 Nebraska, 460, 466. If there be authority to make the grant and it contains no limitation or qualification as to duration, the plainest principles of justice and right demand that it shall not be cut down, in the absence of some controlling principle of public policy. This conclusion finds support from a consideration of the public and permanent character of the business such companies conduct and the large investment which is generally contemplated. If the grant be accepted and the contemplated expenditure made, the right cannot be destroyed by legislative enactment or city ordinance based upon legislative power, without violating the prohibitions placed in the Constitution for the protection of property rights. To quote from a most weighty writer upon municipal corporations, in approving of the decision in People v. O'Brien, supra, a decision accepted and approved by this court in Detroit v. Detroit Street Railway, supra—"The grant to the Railway Company may or may not have been improvident on the part of the municipality, but having been made and the rights of innocent investors and of third parties as creditors and otherwise having intervened, it would have been a denial of justice to have refused to give effect to the franchise according to its tenor and import, when fairly construed, particularly, when the construction adopted by the court was in accord with the general understanding. In the absence of language expressly limiting the estate or right of the company, we think the court correctly held under the legislation and facts that the right created by the grant of the franchise was perpetual, and not for a limited term only." Dillon on Mun. Corp., 5th ed., § 1265.

3. There seems to have been no general law in Kentucky under which a telephone company could acquire the necessary street easement; nor until the enactment of § 4639-b of the Kentucky Statutes, was there any provision in the general law in regard to the acquisition of such rights in or upon the public roads outside of municipal corporations. In both cases the right to place and maintain poles and wires upon either streets or roads was dependent in the one case upon the municipal power of control over its streets, and in the other upon the power of the county fiscal courts by virtue of their control over county roads.

The original source of power over both streets and highways is the State. But this power of control is generally delegated in some form to the municipalities and county authorities of the State. Thus the county fiscal courts, by § 4306, Kentucky Statutes, are given "general charge and supervision of the public roads," etc. Concerning the power resulting from the grant by the State to control streets or public highways, the Kentucky court, in *American Car Co.* v. *Johnson County*, 147 Kentucky, 69, 71, said: "The right to grant a franchise presupposes and is based upon the right of the authority granting the franchise to control the property over which the franchise is granted or which is affected by it. For example, the fiscal court could grant a franchise authorizing the erection of poles along the highways of the county, as the fiscal court had control of the highways. And so, municipal corporations may grant franchises to use the streets and public ways of a city." Again, in *Jackson-Hazard Telephone Co.* v. *Holliday*, 143 Kentucky, 149, 150, the court said: "That the fiscal court having, as it did, under section 4306, Kentucky Statutes, the control and supervision of the public roads of the county, had authority before the enactment of section 4679-b of the Kentucky Statutes to grant the company the right to erect its poles along this road in the absence of a statute expressly giving the court such authority, is we

think settled by the case of *Cumberland Telephone & Telegraph Co.* v. *Avritt*, 120 Kentucky, 34." Section 4679-b, referred to, gives to telephone companies the right to place their poles along such roads subject to regulation by the fiscal courts, but it does not deal with the streets of municipal corporations. The right of such companies to occupy the streets of villages and cities was, therefore, dependent upon the charter powers, express or implied, under which they were organized.

Owensboro was granted a special charter in 1882, by which, among other things, it is given power "to regulate the streets, alleys and sidewalks and all improvements and repairs thereof." If the county fiscal courts had power to grant to such companies a franchise to place their poles and wires along the public roads of a county under the statute giving them "general charge" and right to "supervise" such roads, it logically follows, as stated in *American Car &c. Co.* v. *Johnson, supra,* that the City of Owensboro under the power to "regulate" its streets and alleys had ample authority to grant a franchise to the Telephone Company to place and maintain its poles and wires upon the streets.

The character of the business of such companies was well known. Access with their lines to the houses of their customers in the city absolutely required the right to use the public streets, either longitudinally or to cross them. By such an exertion of its power to control and regulate the use of the streets it did not authorize a new public use. Such a use was a legitimate street use and did not impose upon the owner of the fee in the street an additional burden. *Cumberland Telephone and Telegraph Co.* v. *Avritt,* 120 Kentucky, 34. Neither was the city thereby stripped of its police power over the streets. *Louisville City Railway* v. *City of Louisville,* 8 Bush, 415, 420. Nor did it undertake to grant an exclusive right. Express power to grant an exclusive street franchise has generally

been held essential.   Dillon, Mun. Corp., 5th ed. §§ 1215, 1218, 1234.   The grant in this case was not exclusive, and we are not called upon to deal with that question, since the ordinance here involved expressly reserves the right to make similar grants to other companies.

The great power of Congress over interstate commerce is wrapped up in the power to "regulate" such commerce. The authority of the City of St. Louis to compel the Western Union Telegraph Company to pay a rental for the maintenance of its poles and wires upon the streets of the city grew out of a charter power to "regulate" its streets and alleys.   In this case (149 U. S. 465, 469), the court said:

"The word 'regulate' is one of broad import.   It is the word used in the Federal Constitution to define the power of Congress over foreign and interstate commerce, and he who reads the many opinions of this court will perceive how broad and comprehensive it has been held to be.   If the city gives a right to the use of the streets or public grounds, as it did by ordinance No. 11,604, it simply regulates the use when it prescribes the terms and conditions upon which they shall be used."

In *City of Owensboro* v. *Cumberland Telephone & Telegraph Company*, 174 Fed. Rep. 739, a case involving the regulation of the rates and charges of the present appellee, the power of the City of Owensboro under its charter power to "regulate" was held by the Circuit Court of Appeals of the Sixth Circuit to amply justify the grant here involved, though its duration was not involved or considered.

That the power to "regulate" embraces power to grant to such companies the right to place and maintain their poles upon the streets has been generally held: *Pikes Peak Power Co.* v. *Colorado Springs*, 105 Fed. Rep. 1; C. C. A. 8th Circuit; *Detroit Citizens' Railway* v. *Detroit*, 64 Fed. Rep. 628, 636; C. C. A. 6th Circuit.   In the latter case

it was held that a charter power to "open, close and widen streets, and to prescribe, control and regulate the manner in which the highways, streets and avenues shall be used and enjoyed," was a power broad enough to permit the city to consent to the use of its streets for such purposes by any company having the requisite franchise of a street railway company.  To the same effect see Dillon, Mun. Corp., 2d ed., § 575; *Atchison Street Railway* v. *Missouri &c. Ry.,* 31 Kansas, 661; *Southern Bell Telephone Co.* v. *Mobile,* 162 Fed. Rep. 523, 562; *State* v. *Murphy,* 134 Missouri, 562; *Brown* v. *Duplessis,* 14 La. Ann. 842; *Chicago, B. & Q. Railway* v. *Quincy,* 136 Illinois, 489; *New Castle* v. *Lake Erie &c. Railroad,* 155 Indiana, 18.

4. It is next insisted that the grant is limited to the life of the corporation that accepted it.  The assumption that this life was limited to twenty-five years from the date of the organization of the grantee corporation is erroneous. The articles of agreement did provide that the company should terminate in twenty-five years, but as this was an agreement of the stockholders *inter sese,* it was competent for them, if the general incorporating act under which the company was organized permitted, to extend its life.  This is precisely what the Kentucky act under which the company was organized permitted.  Thus it provided that corporations organized for any work of internal improvement could be formed to endure for fifty years, and those formed for other purposes, for twenty-five years.  General Statutes of Kentucky 1888, c. 56, § 7, p. 764.  But the same act provided that in either case the term might be extended by action of three-fourths of the stockholders. Thus, if it be assumed that the grant was limited to the life of the grantee, that life was capable of extension at the will of the stockholders, and an extension did occur as contemplated.  But this ordinance was to the Cumberland Telephone Company and its assigns.  It vested a

property right, capable of passing to an assignee, and did in fact pass to the present consolidated company, whose life, by express action of its entire body of stockholders, is for two hundred years. That a corporation is capable of taking a grant of street rights of longer duration than its own corporate existence is the settled law of this court: *Detroit v. Detroit Street Railway, supra; Louisville* v. *Cumberland Telephone & Telegraph Co., supra.*

The case of *St. Clair County Turnpike Company* v. *Illinois,* 96 U. S. 63, has been cited and relied upon as deciding that a grant to a corporation is limited in duration to the life of the grantee. If the case is to be regarded as holding the wide doctrine for which it has been cited, it is in conflict with the cases cited above. But it does not go so far as claimed. The grant there involved was of the right to extend an existing turnpike over a certain dyke and county bridge, and to maintain a toll-gate upon the extension. The company to which this additional right was given had been incorporated for a term of twenty-five years. The grant was to the particular company by name and was not to its assigns or successors. This court likened such a grant to a grant at common law to a natural person without words of restriction, which, said the court, "creates only an estate for the life of the grantee; for he can hold the property no longer than he himself exists." The grant here involved was to the corporate grantee, its assigns and successors; and falls under the principle of the cases cited above.

5. It is next said that the power to grant found in the city charter is coupled with the power to amend or repeal. The tenth section of the city charter provides that "The Common Council shall have control of the finances and all property, real and personal, belonging to the city, and shall have full power to make, publish, and repeal all ordinances for the following purposes." Then follows fifty-seven sub-sections relating to the legislative power

of the council. The twenty-seventh section gives the
council the power "to regulate the streets, alleys and
sidewalks and all repairs thereof."

The power to be a corporation and to conduct a tele-
phone business did not come from the city, nor could it.
The only thing which the ordinance pretends to do is to
grant an easement in the streets which, as we have already
shown, was an unlimited right to place and maintain poles
and wires upon the streets, subject, however, to the police
power of the city. This repealing ordinance, though it
purports to be an exercise of the police power in the
"whereas" clause, proceeds immediately to contradict
the assertion that the poles and wires are a "nuisance" by
the proviso giving the company an opportunity to pur-
chase the right to continue the use of the streets under
conditions "to be prescribed by ordinance," upon request
of said company. It is a plain attempt to destroy the
vested property right under which a great plant had been
installed and operated for more than twenty-five years.
When that grant was accepted and acted upon by the
grantee it became a contract between the city and the
telephone company, which could not be revoked or re-
pealed, unless the power to repeal was clearly and un-
mistakably reserved.

The sixth section of the granting ordinance provides
that, "This ordinance may be altered or amended as the
necessities of the city may demand." This is no more than
a reservation of the police control of the streets and of
the mode and manner of placing and maintaining the
poles and wires incident to the unabridgeable police
power of the city. See *Grand Trunk Railway* v. *South
Bend*, 227 U. S. 544. It does not reserve any right to
revoke or repeal the ordinance, or to affect the rights
therein granted. Nor does the city attempt to justify its
action in requiring the poles and wires to be removed from
the streets under that section, but solely upon the general

power in the city charter "to make, publish and repeal ordinances." This general power to repeal ordinances obviously refers to ordinances which are legislative in character, and exertions of the governmental power of the municipal council,—a power in its nature not to be abridged by irrepealable ordinances. *Baltimore* v. *Baltimore Trust Co.*, 166 U. S. 673; *Grand Trunk Railway* v. *South Bend, supra.* The power to repeal, alter and amend such ordinances is one which inheres in the power to legislate, and its mention is pure surplusage.

To construe this general power of repeal as a reservation of a power to revoke or destroy contractual rights which have vested under an ordinance, which, upon its face, makes no such reservation, would be to place every contract made by the city by virtue of an ordinance, legislative in form, subject to the mercy of changeable city councils. In the absence of an express reservation in the contractual ordinance, or an express delegation of power to revoke contracts under such ordinances, we think no such extraordinary power is to be implied. *Ashland* v. *Wheeler*, 88 Wisconsin, 607, 616.

Much the same question arose in *Hudson Telephone Company* v. *Jersey City*, 49 N. J. L. 303, where the right granted was held to be irrevocable under a similar power. *Greenwood* v. *Freight Co.*, 105 U. S. 13, is not in point. That case involved the repeal by the Massachusetts legislature of a legislative charter, under a reserved power, by general law of the State making "every act of incorporation (after a certain date) subject to amendment, alteration or repeal, at the pleasure of the legislature." That was a plain, unmistakable reservation of the right to repeal at the pleasure of the State. This clause of the charter in the instant case reserves no more than the power to repeal, as well as to make and amend ordinances, but by no means operates to convey the power to "repeal" a grant of street rights which had been accepted and had

thereby become a contract under the protection of the contract clause of the Constitution. That the right may be reserved to destroy a contract may be conceded; but when such a right is claimed, it must be clear and explicit. The contention here advanced, if conceded, would paralyze the contractual power of the city, for if it has application to this ordinance, it would equally apply to every other contractual ordinance which the city might enact, though the contract had been accepted and expenditures made.

In *Lake Roland El. Ry.* v. *Baltimore*, 77 Maryland, 352, an ordinance consenting to the laying of a double track over designated streets was involved. This ordinance could not become effective until confirmed by the legislature. The confirming act contained these words: "The said Mayor and City Council to have the same power and control hereafter in reference to the enforcement, amendment or repeal of said ordinance as it has or would have in respect to any ordinance passed under its general power." Later this ordinance was in part repealed, and the repeal was held valid upon the ground that the control of the city over its streets was a legislative power and that the council could not consent to any rights therein which were not revocable, although the city might be liable for damages. The opinion does not rest upon the theory that any right of repeal was specially reserved in the ordinance or by the confirmatory act. The validity of the repeal was put upon the right to repeal every ordinance legislative in character. The case is out of line with the great weight of authority in respect to the irrevocable character of property rights vested under an ordinance when the right to revoke is not expressly reserved.

In *Baltimore Trust Co.* v. *Baltimore*, 64 Fed. Rep. 153, Circuit Judge Goff refused to follow the case, holding that the question of contract or no contract under such an ordinance was a Federal question, and that the confirmatory legislation reserved no right of repeal, and that

none existed under the general right to repeal ordinances. In the same case, 166 U. S. 673, the decree of Judge Goff was reversed upon the sole ground that the requirement of the so-called repealing ordinance that the railway company should maintain but one track on one of the designated streets was a legitimate exercise of the police power, and not a substantial change of the contract. The case is so explained and distinguished in *Grand Trunk Railway* v. *South Bend, supra.*

6. In June, 1900, the Cumberland Telephone and Telegraph Company consolidated with the Ohio Valley Telephone Company, likewise a Kentucky corporation, under authority of the Kentucky act of April 5, 1893 (Acts of 1891, 1893, c. 171, p. 612). Although the separate existence of the constituent corporations was terminated and they became a single corporation, the consolidated company was, by express provision of the act referred to, "vested with all the property, business, credits, assets and effects of the constituent corporations, without deed or transfer, and bound for all their contracts and liabilities." Being property, alienable and assignable, the street rights of the constituent companies passed to the consolidated company. The same question arose and was expressly decided in *Louisville* v. *Cumberland Telephone & Telegraph Co., supra.*

7. Finally, it was claimed that in a prior litigation in a state court, between the same parties, the ordinance of 1889 had been held to be in excess of the power of the city as nothing more than a revocable license. The suit referred to had been brought by the Telephone Company to restrain the city from placing poles and wires of an electric light system, in course of construction by the city, in such close proximity to the poles and wires of the Telephone Company as to interfere with its current. One of the defenses was that the city had no power under its charter to make the grant which it had assumed to

make by the ordinance of 1889, and that the Telephone Company was, therefore, a trespasser upon the streets. Upon a final hearing the bill was dismissed. This decree was pleaded as an adjudication of the question of the validity of the ordinance under which the Telephone Company now claims. But the judgment makes the opinion of the court filed at the time "a part of the record." That opinion shows that the court dismissed the bill because its object had failed, the city having actually constructed its lines before final decree. In reference to the issue as to the validity of the Telephone Company's street rights, the Kentucky court said: "In passing upon the question of granting or refusing the injunction, I deem it wholly unnecessary to pass upon the validity or invalidity of the ordinance discussed." The litigation, though between the same parties, is upon an entirely different cause of action. The bar of the former judgment is, therefore, confined to the questions which were actually litigated and decided in the former case, and it devolved upon the city to show in support of its plea, the cause of action being different in the present case, that the point here in issue was adjudged in the former case. *DeSollar* v. *Hanscome*, 158 U. S. 216; *Virginia-Carolina Chemical Co.* v. *Kirven*, 215 U. S. 252.

We find no error in the decree of the court below and it is, therefore,

*Affirmed.*

MR. JUSTICE DAY, with whom concurred MR. JUSTICE McKENNA, MR. JUSTICE HUGHES and MR. JUSTICE PITNEY, dissenting.

I am unable to concur in the judgment and opinion announced in this case. In my opinion the ordinance of December 4, 1889, granting to The Cumberland Telephone & Telegraph Company, its successors and assigns; the

right to use the streets and alleys of the City of Owens-
boro for the purpose of erecting poles and stringing wires
thereon to maintain a telephone system, did not grant a
perpetual franchise, because of the limitation upon the
authority of the City of Owensboro to grant a perpetual
franchise.

The case is not controlled by the previous cases in this
court, such as the late case of *Louisville* v. *Cumberland
Telephone Co.*, 224 U. S. 649, which had to do with the
construction of a legislative grant to a corporation having
perpetual succession and did not involve the construction
of the charter of a Kentucky city such as is here under
consideration.

The power to grant a perpetual franchise to telephone
and similar companies desiring to use the streets and alleys
of the City of Owensboro is said to be derived under § 10
of the charter, conferring upon the common council in
subsection 27 the right to regulate streets, alleys and side-
walks and all repairs thereof in the city.   Conceding that
if this power were conferred without limitation it might
authorize a grant in perpetuity of the character herein
involved, the authority found in subsection 27 as well as
other municipal powers are all granted to the common
council by the legislature of the State upon the following
terms, preceding the grant of authority: "§ 10.   The
common council shall have control of the finances and all
property, real and personal, belonging to the city, and
shall have full power to make, publish, amend, and repeal
all ordinances for the following purposes, to wit."   In other
words the authority granted to regulate the streets is
limited by the express reservation that it shall be exercised
subject to the power of the city to amend and repeal any
ordinance so enacted.

In *Greenwood* v. *Freight Co.*, 105 U. S. 13, wherein this
court held that a grant to a street railway company subject
to the limitation of the right to amend, alter or repeal was

subject to future legislation ending the right of the street railway company to operate in the streets of the city, Mr. Justice Miller, who delivered the opinion of the court, stated the origin of statutory and legislative reservations of this character enacted since the decision of *Dartmouth College* v. *Woodward*, 4 Wheat. 518, construing corporate charters as contracts between the public authorities and the grantees, beyond legislative control and within the protection of the contract clause of the Federal Constitution. The learned Justice said (p. 20):

"It became obvious at once that many acts of incorporation which had been passed as laws of a public character, partaking in no general sense of a bargain between the States and the corporations which they created, but which yet conferred private rights, were no longer subject to amendment, alteration, or repeal, except by the consent of the corporate body, and that the general control which the legislatures creating such bodies had previously supposed they had the right to exercise, no longer existed. It was, no doubt, with a view to suggest a method by which the state legislatures could retain in a large measure this important power, without violating the provision of the Federal Constitution, that Mr. Justice Story, in his concurring opinion in the *Dartmouth College Case*, suggested that when the legislature was enacting a charter for a corporation, a provision in the statute reserving to the legislature the right to amend or repeal it must be held to be a part of the contract itself, and the subsequent exercise of the right would be in accordance with the contract, and could not, therefore, impair its obligation."

In view of that policy this court held that whatever rights remained to its other property the authority to run cars upon the streets of the City of Boston, being subject to the reservation, terminated upon the repeal of the ordinance.

If there is such right to repeal, the authorities are con-

clusive that it may be exercised so as to terminate the rights of the company to further use the streets. In a recent case, *Calder* v. *Michigan*, 218 U. S. 591, this court approved and reaffirmed this principle. In that case The Grand Rapids Hydraulic Company had been incorporated by the legislature of Michigan and had constructed and was then maintaining an elaborate water system. The legislature repealed the charter, reservation to amend or repeal having been made in the original act. In aid of the contention that the repealing act was void under the Fourteenth Amendment to the Constitution, it was alleged that there were outstanding bonds and a mortgage on the company's plant, including its franchise to own and operate its system; also that, the city being a competitor of the company, the city authorities had secured the passage of the repealing statute by unfair means. This court said (pp. 598 *et seq.*):

"The defendants now, on the ground that there are limits even to the operation of a reserved power to repeal, argue that we should consider these allegations. But we do not inquire into the knowledge, negligence, methods or motives of the legislature if, as in this case, the repeal was passed in due form. *United States* v. *Des Moines Navigation & Railway Co.*, 142 U. S. 510, 544. The only question that we can consider is whether there is anything relevant to the present case in the terms or effect of the repeal that goes beyond the power that the charter expressly reserves.

". . . By making a contract or incurring a debt the defendants, so far as they are concerned, could not get rid of an infirmity inherent in the corporation. They contracted subject, not paramount, to the proviso for repeal, as is shown by a long line of cases. *Greenwood* v. *Freight Co.*, 105 U. S. 13. *Bridge Co.* v. *United States*, 105 U. S. 470. *Chicago Life Insurance Co.* v. *Needles*, 113 U. S. 574. *Monongahela Navigation Co.* v. *United States*, 148 U. S. 313, 338, 340. *New Orleans Waterworks Co.* v.

*Louisiana,* 185 U. S. 336, 353, 354. *Knoxville Water Co.* v. *Knoxville,* 189 U. S. 434, 437, 438. *Manigault* v. *Springs,* 199 U. S. 473, 480. It would be a waste of words to try to make clearer than it is on its face, the meaning and effect of this reservation of the power to repeal.

". . . The only question before us now is the validity of the judgment ousting the defendants from 'assuming to act as a body corporate, and particularly under the name and style of the Grand Rapids Hydraulic Company.' This really is too plain to require the argument that we have spent upon it. We may add that it is a matter upon which the bondholders have nothing to say."

See also *Hamilton Gas Light Co.* v. *Hamilton City,* 146 U. S. 258.

It is said, however, and that seems to be the ground upon which the decision of the court upon this point rests, at last, that the reservation of the right to repeal does not clearly appear in the charter of Owensboro, as it did in the Massachusetts legislation considered in *Greenwood* v. *Freight Co., supra,* and it is said that such right, when it is claimed, must be clear and explicit. To my mind the purpose of the Kentucky legislature was evidenced with perfect clearness, for I think that the same law which gave the city the right, which otherwise would have rested with the legislature alone of exercising authority over the streets, which in this case, it is held, authorized their use for telephone purposes, in unmistakable terms made such authority subject to the clearly stated and definite limitation named. Furthermore, the doctrine is well settled that legislative grants of municipal authority shall be construed most favorably to the public and against persons claiming thereunder, a doctrine sanctioned by decisions of this court. *Moran* v. *Commissioners of Miami County,* 2 Black, 722; *Citizens' Street Railway* v. *Detroit Railway,* 171 U. S. 48; *Los Angeles* v. *Los Angeles City Water Co.,* 177 U. S. 558. Surely, if the intention of the

Kentucky legislature to reserve in the municipality the authority to repeal such grants as the one here involved is not clearly manifested, at least there is reasonable room for doubt, and such doubt must be resolved in favor of the public. If the doubt be determined in favor of the company and a grant which is not clearly in perpetuity is held to be such, the effect is to tie the hands of the municipality from obtaining revenue from the use of property held by it in trust for all its people.

It is also said that the exercise of the reserved right to repeal in cases like this will have the effect to destroy contract rights, upon the strength of which large investments may have been made. But this argument overlooks the proposition that, if the grant was made subject to the right to revoke by subsequent action of the authority which made the grant, then no contract was entered between the parties beyond the control of the reserved power of the municipality, for as Mr. Justice Miller said in the *Greenwood* v. *Freight Co. Case,* under such "a provision . . . reserving to the legislature the right to amend or repeal it must be held to be a part of the contract itself, and the subsequent exercise of the right would be in accordance with the contract, and could not, therefore, impair its obligation." So, if this limitation in fact existed, the right to repeal was inherent in the authority which made the grant, and the grantee is conclusively presumed to be aware of this limitation, and to make his investments subject to the exercise of the reserved right. *Calder* v. *Michigan, supra.* Moreover, if limited grants are to be construed into perpetuities then the control over streets for railway, telephone and other kindred enterprises of enormous value are granted to private corporations without compensation for the use of such valuable rights which belong to the municipality. Recent cases in this court have shown the great value of such privileges, and that investors are found who are willing to pay for

the privilege of using the public streets for these purposes.

A single case is cited in the opinion of the court to sustain the conclusion reached upon this branch of the case, and that is *Hudson Telephone Company* v. *Jersey City*, 49 N. J. L. 303. An examination of that case shows that it did not involve the question now under consideration. There the telephone company was organized as such under the prevailing statutes of the State and had obtained on certain conditions the permission of the municipality to use the streets in accordance with a provision in the statute that the designation of the streets to be used and manner of placing poles should first be secured. An ordinance was passed, revoking the permission, although the company had complied with the conditions, and the court held that the revoking ordinance was invalid. The court noticed the power reserved in the corporation act to repeal, suspend and alter charters, and the power of the city council to repeal ordinances. The former was held to run to the legislature solely, and it was said that there was no provision in the act authorizing the municipality to revoke its permission. Of the latter the court said that the power to repeal was a general power arising from the power to pass ordinances and existed without the express charter powers, and that such general power would not sustain the rescission of an act authorized by other legislation.

A somewhat diligent search has failed to discover cases exactly in point construing a reservation of the character herein involved. The case of *Lake Roland Elevated Railway Co.* v. *Mayor &c. of Baltimore*, 77 Maryland, 352, followed and approved in *United Railways* v. *Hayes*, 92 Maryland, 490, is, however, closely analogous. In that case the city granted a franchise to the railway company permitting it to lay tracks in the streets of the city and also to erect an elevated railway in a certain street. A statute passed to con-

firm the action of the city with respect to that part of the ordinance granting a franchise which related to the elevated railway contained a reservation to the city of "the same power and control hereafter in reference to the enforcement, amendment or repeal of said ordinance [granting the franchise] as it has or would have in respect to any ordinance passed under its general powers." This reservation was held to authorize the repeal of the grant in question. The case upon this point meets the argument made in the opinion in this case that the right to amend, alter or repeal would have existed without the statute and cannot be held to cover the grant of franchise privileges to use the streets. Undoubtedly this right of repeal would have existed, and hence its insertion was unnecessary unless it was to have some further purpose than that the law already gave, the general power of a municipality to repeal ordinances of a legislative character. We think the intention in this case was the same as in the Maryland case, to preserve in the municipality authority over the streets in the interests of the public.

In my view the case in its present attitude comes to this: The permission to place poles and string wires in the City of Owensboro was granted under a charter which expressly reserved the right to repeal by subsequent act of the municipal legislature. In the face of this authority and presumably with knowledge of it, the company has entered upon the streets and made use of them for the purposes intended. Holding its grant subject to this superior right in the city to end it, I think the subsequent repealing ordinance was within the power of the municipality.

MR. JUSTICE MCKENNA, MR. JUSTICE HUGHES, and MR. JUSTICE PITNEY concur in this dissent.