No. 13,512.

LAKE CHARLES ICE, LIGHT AND WATERWORKS COMPANY VS. CITY OF LAKE CHARLES.

## SYLLABUS.

1. *Ultra vires* is defendant's principal ground of defense in an action for the water and light supplied under a contract of lease.
2. A special tax was assessed to meet the expense in part. As to the remainder, which was not provided for by this tax, budgets were adopted looking to the setting aside of a special fund to meet the instalments as they fell due.
3. In so far as the tax-payers have paid this tax and in so far as they have paid in accordance with the requirements of the budget, the defendant is bound to remit to the plaintiff by whom it has been earned.
4. The first act of incorporation, viz: the charter of 1807, was a legal charter. and the municipal officers acting under the authority conferred were, at least, officers *de facto*, with power enough to incur liability and bind the municipality by contract as lessee to secure light and water.
5. The amendment of the charter of 1867, though illegal, did not have the effect of placing the city in a situation to deny its indebtedness to its servants. The municipality had implied power to contract as lessee for light and water.
6. The last statute, amending the act of incorporation of 1867, looked to the payment of amounts earned by employes of the city by giving original life and vitality to the original charter which had never been repealed and by reinstating, as far as possible, the municipality in all its rights, and including corresponding liability in its terms, to the extent that the legislative will could thus bind municipal action.
7. The taxes not collected, which the defendant company had substantially agreed to receive in part payment and which the city was unable to collect because of errors of form in manner of attempting to enlarge her limits, are deducted from plaintiff's claim.

APPEAL from the Twelfth Judicial District, Parish of Calcasieu—
Read, J.

*Pujo & Moss* for Plaintiff, Appellant.

*Winston Overton (Fenner, Henderson & Fenner,* of Counsel), for Defendant, Appellee.

The opinion of the court was delivered by BREAUX, J.

On application for rehearing by BLANCHARD, J.

BREAUX, J.  Plaintiff brings this suit for the sum of fifteen thousand and fifty dollars, with interest, for supplying water and light to the city of Lake Charles.  Two contracts to this end were entered into, both dated in 1891.

In November of that year, the town council took steps to secure a water supply and, to that end, entered into one of the contracts with the plaintiff company which was not to be considered as completely binding before holding a taxpayers' election.  The election was called, and resulted in favor of the tax.  By the terms of this contract, the city became the lessee of a number of hydrants from the defendant company.  The city, by special ordinances, obligated itself to appropriate and set aside, each year, an amount sufficient to pay for the year's supply of water.

Plaintiff performed its part of the contract from October 1st, 1892, to the date of the trial of this suit in the District Court, and the defendant, without objection at any time, received the water supplied. The number of inhabitants and the wealth of the city increased, whether owing to the attraction of the pleasing shores of the lake of the same name and the many advantages which the locality affords, or to the water supply and light furnished by the plaintiff company, we will not stop to enquire, although incidentally referred to in the argument.

The other contract, before maintained, entered into the same year between the city and the plaintiq company was for light.  The council, in matter of the details of this contract, did not submit the question of taxation to the taxpayers, no election by the taxpayers was held to assess the amount, as we infer after having read the voluminous record before us.  An appropriation was made and provision adopted to set aside an

amount to pay for the light during the fifteen years which the plaintiff bound itself to furnish light to the city.

Defendant attacks these contracts, and urges, in defense, that they are illegal and not binding upon the municipality for the reason that the corporation, the defendant, sought to create by the amendment to the town charter attempted in 1884 and again in 1894 was not warranted by the law and that it never had any vitality either as a *de jure* or *de facto* corporation and was without authority to create obligations and incur debts; that the officers, after these amendments had been adopted, were neither *de jure* nor *de facto* officers.

The legal history of the controversy takes us back to the act of incorporation of the town of Lake Charles in the year 1867. In the charter then granted, the limits of the town are well defined. The town was invested with such express powers as were nearly always inserted in acts of incorporation of municipalities in those days. While there was general power in the charter and a number of special powers delegated, there was none expressly granted to provide for the supply of water and light. Owing to the growth and improvement of the city, in 1884, the thinly inhabited town had become a prosperous little city, and an amendment to the charter of 1867 was submitted to a vote of the citizens. It was adopted, and the limits of the city were extended so as to embrace considerable additional territory and include, as residents within its limits, an additional large number of voters and tax-payers. The municipality continued in the exercise of its jurisdiction under the original charter and this amendment without change, until 1894, in which year another attempt was made to amend the charter. Both attempts to amend the charter of incorporation proved of no avail. The court decided that they were abortive and completely illegal; that the claim of the corporation of having enlarged its territory according to law was unfounded, for the reasons stated in the opinion. Dees vs. City of Lake Charles, 50 Ann. 356. The defendant now contends that the only municipal corporation which ever had any legal existence was the town of Lake Charles created by its legislative charter of 1867, having no powers except those delegated by that charter, covering no territory except within the limits therein defined, having no other inhabitants than those living in that territory, and no officers except those elected and qualified according to the requirements of that charter; that, in consequence, it became necessary to relieve the city from the state of suspended animation in which it had existed since the attempted

adoption of those amendments and to revive its corporate activity, to have officers appointed competent to represent it and to administer its municipal functions; that the officers of the asserted corporation retired and abdicated and the Governor exercised his appointive power and filled the vacancies; that the officers appointed took charge and administered municipal affairs until the election day fixed in the charter arrived, and then a Mayor and five councilmen were elected by the people of the corporation; that this body refused to recognize the contracts sued on, or to make any provision for their payment.

After all this, by valid proceedings, the charter of 1867 was legally amended, the limits extended, the name changed, and the amended charter adopted. (See Act of 1899.)

Defendant insists that the contracts sued on, because of the informality decreed in the cited case, are not binding.

Plaintiff calls our attention to the fact that the change contemplated by the proceedings of 1884 was to annex additional territory and that in other respects the charter of 1867 remained as it originally was, and that the legislative proceedings of 1899 alone, amended the act of incorporation of 1867. Section 3 of the amendment sets out that the municipality shall have all the powers granted under the original charter of 1867, as though the territory annexed had formed part of the territory under the old charter. This provision of the statute has, in our view, an effect which should not be overlooked in passing upon the rights of the parties. The legislative intent evidently was, as far as possible, to remedy the informality which had crept into the proceedings under which an election was held to extend the limits of the city, as before stated. If effect be given to this language of the statute, it follows, in our view, that creditors were to be protected in their claims.

Referring to the charter of 1867, and the powers delegated, the defendant urges that it embraced no power authorizing the municipality to make provision to supply the city with water and light. We agree with the statement that the power was not expressed, but we are decidedly of the opinion that it may fairly be implied that the municipality did not act beyond its powers in so far as it made suitable provision for lighting the streets and for supplying the public with water. Those, in modern cities, have become essential improvements. Lights lessen the opportunity for committing crime, and go far toward preventing disorder. They assist the police authorities in enforcing the ordinances and laws and afford, in many respects, better protection

to the owners of property, and add enjoyment to life not felt in dark and gloomy streets where lights are dim and total darkness prevails.

The other claim is covered, we have seen, by a contract having in view the supply of water to the city, as important to the general welfare and interests as lights. They are directly conducive to good health and to the preservation of property in the event of fires. The amount plaintiff seeks to recover is due for supplying wholesome water. The importance of such a supply, to the extent that it is needed, cannot be exaggerated.

A municipality would fail of the purpose intended in its organization, if it failed entirely in taking such steps as are necessary to obtain enough water and sufficient light. They are intimately connected with its existence, if the purpose be to provide efficient systems when necessary in administering public affairs. There are decisions by this court, and by the courts of sister States, recognizing this important right of municipalities. We are not inclined to curtail a right as important and indispensable by deciding that express words must be used in order to warrant its exercise. It is sufficiently granted, in our view, if the corporation is invested with the powers contained in the charter before us for interpretation. We find ample support in the following decisions: Conery Jr., et al. vs. Waterworks Co. et als., 41 Ann. 910 (922); New Orleans Gas Light Co. vs. City of New Orleans et als., 42 Ann. 188.

This being our conclusion regarding the power delegated by the charter of 1867, we take up for decision the liability of that portion of the corporation included within the limits of this charter. The testimony before us clearly sets forth the number of hydrants leased by plaintiff to the defendant that were within the limits of the corporation prior to the first amendment in 1884, also the number of lights furnished. The amount due for the service within the old corporate limits is easily separated from the amount due for services outside of those limits, i. e., for such services in the new limits.

The Mayor and five of the directors were residents within the old limits. As relates to domicile, no good ground of objection can arise regarding their authority. They, as relates to territory, held under the charter, and although they were elected by votes, in part, of voters residing outside of the limits, yet they were officers of the town in charge of the administration of the municipal affairs. They were not acting under a charter illegally adopted. They filled a vacancy in the

offices *de jure* of the corporation. They, in consequence, in our view, were at least officers *de facto*. We are firmly convinced that as to the water and lights furnished to the city within the old limits, the defendant is liable for the amount to the extent of light and water furnished.

Extending our enquiry a step further, we are led to inquire into the claim for light and water furnished in lighting the streets and supplying water outside of the corporate limits as fixed by the amended charter of 1884 and 1894. The defendant succeeded legally to the corporation of 1867 and is liable for all legitimate debts contracted under the charter of that date, to repeal which, in its entirety, no attempt was ever made, either by the amendment of 1884 or that of 1894. These claims, we think, are due by the corporation. We have seen that to pay a part of the amount, a tax was assessed and in great part collected. As relates to the tax collected, the defendant is scarcely in a position to retain an amount which has been specially collected, as far as it will, to pay the claim of plaintiff. The taxpayers have received the benefit of this light and water and have paid therefor. While it is *in transitu* from the taxpayer to the plaintiff creditor, it would hardly be equitable to turn it aside and apply the amount collected to another indebtedness of the corporation. It became the money of the defendant for a particular purpose.

The defendant should pay it over as was intended when the collection was made. It may be said that this is true only of part of the fund, that as to the remainder, no provision was made for its payment by submitting the question to the votes of the taxpayers.

We have seen that those in office during the time for which plaintiff sues, bound themselves by the contract entered into between these parties, to collect from the taxpayers and set aside an amount sufficient to pay this tax. Budgets were adopted to that end, showing the amounts needful for its payment. The taxes were paid or provided for in those budgets to meet the expense account. We understand that, year after year, as shown by the budgets, the defendant collected an amount to be expended especially in meeting this account for rent.

The defendant has no authority to change the destination of the fund as budgeted on the ground of informality in extending the city limits. The amount was earned, and no good reason presents itself to stop its payment. The act of the Board was, after all, the act of the city. Here, an equitable question presents itself, relating to the rights of the defendant. The special tax has not all been collected, in great part,

Ice, Light, and Waterworks Co. vs. City of Lake Charles.

because of the defense of a tax-payer against the tax, and a judgment pronounced in the suit. To the extent that this tax has not been collected, because of this decision, we think that the defendant is entitled to relief. The budget and the other proceedings of the council were based, to some extent, on the recovery of this tax. The city should not be made to account for an amount not collected, nor for an amount which was not set aside for the payment of this tax and which the city has not, chiefly because of adverse litigation, succeeded in collecting. The following is an excerpt from the brief of counsel for plaintiff: "We do not for a moment concede that plaintiff is in any way responsible or chargeable with the failure to collect the special tax, or that the city is entitled to recover for such sum." Counsel added, in substance, that should the court entertain a different view, proper credit will have to be given. The court thinks that this credit would be equitable and just, and, for that reason, the decree will so order.

We will not, in these proceedings, seek to give vitality to the contract to the end of the term. Other issues may arise and will have to be considered before pronouncing judgment on that question.

It is therefore ordered, adjudged, and decreed, that the judgment appealed from is avoided, annulled, and reversed.

The law and the evidence being in favor of plaintiff, it is ordered, adjudged, and decreed, that plaintiff have judgment for the sum of fifteen thousand and fifty dollars, with five per cent. interest on one thousand and eighty-five dollars thereof from October 1st, 1897; on one thousand and eighty-five dollars thereof from January 1st, 1898; on one thousand and eighty-five dollars thereof from April 1st, 1898; on one thousand and eighty-five dollars thereof from July 1st, 1898; on one thousand and eighty-five dollars thereof from October 1st, 1898; on one thousand and eighty-five dollars thereof from January 1st, 1899; on one thousand and eighty-five dollars thereof from April 1st, 1899; on one thousand and eighty-five dollars thereof from July 1st, 1899; on one thousand and eighty-five dollars thereof from October 1st, 1899; on one thousand and eighty-five dollars thereof from January 1st, 1900; on six hundred dollars thereof from June 1st, 1898; on six hundred dollars thereof from September 1st, 1898; on six hundred dollars thereof from December 1st, 1898; on six hundred dollars thereof from March 1st, 1899; on six hundred dollars thereof from June 1st, 1899; on six hundred dollars thereof from September 1st, 1899; and on six

hundred dollars thereof from December 1st, 1899, until paid and all costs of the suit, subject to a credit of that part of the tax of a mill and a half which the city did not succeed in collecting.

The case is remanded only as relates to this credit. The court a qua will, after the case shall have been remanded, ascertain the amount of the one and a half mill special tax not collected, owing to the failure to collect because of the adverse decision to its collection from those by whom it was due (as said decision was a test case, the court understands,) and after proper credit given, the present decree will be subject to no other change.

In all other respects, the rights of the plaintiff and defendant are reserved.

## On Application for Rehearing.

BLANCHARD, J. The charter of the town of Lake Charles adopted in 1867 contained the grant of power to the municipality to construct public works. Under this authority, the town could erect, maintain and operate a waterworks system requisite for supplying water for flushing streets and gutters, for extinguishing fires and for all other public purposes, and could erect, maintain and operate an electric light plant requisite for lighting the streets and public places of the town; and this carried with it by necessary implication the lesser power to *contract* for supplying the town with water and lights needed for public purposes.

The town of Lake Charles, as organized under the act of 1867, never ceased to exist until it was merged into the city of Lake Charles as now existing and as incorporated by the amendments adopted in 1899, and the city of Lake Charles as thus latterly incorporated is held to be the legitimate successor of the town of Lake Charles as it existed under the charter of 1867, and as it existed under that charter as attempted to be amended and extended in the years 1884 and 1894.

Municipal corporations cannot extinguish their debts by changing their names, or enlarging their limits and powers, or organizing under new charters. A debt once contracted by a municipal corporation will survive as a debt against whatever corporate entity is subsequently created to take its place, at least to the extent that the new or enlarged corporation absorbs the old, and, certainly, to this extent the obligation of the contract remains intact and cannot be impaired.

The water and electric light contracts made by the municipality with

plaintiff corporation must, therefore, be held to evidence valid obliga-tions binding at least upon all the inhabitants and all the property within the territorial limits of the town of Lake Charles as defined by the act of 1867, to the extent that water and electric lights were supplied for the purposes of the municipality within such limits, under the contracts.

And to this extent the defense of error of fact and law, pleaded as relieving the town of Lake Charles from liability under the contracts, cannot be entertained.

The fact that persons who did not reside in the old limits may have voted for the election of the Mayor and Aldermen in office at the time the contracts were let, and may, too, have voted for the special tax, has no bearing, unless defendant has shown, which it has not done, that the votes of such persons would have changed the result of the election. Paine on Elections, Sec. 510.

It may be that the town in making the water and light contracts erred and went beyond its authority in extending the benefits of the same over territory beyond its limits. But the effect of this, in our view, is not to destroy the contracts themselves, in so far as the town proper was concerned, but to limit the liability of the corporation under the same to water and lights supplied it under the contracts within its true territorial limits.

This is what the judgment of the court practically does when it decrees recovery against the corporation for the amount claimed, subject to a credit to the extent of the avails of the special tax levied on property outside of the limits of the corporation as defined by the act of 1867, which, up to the institution of this suit, the authorities had not been able to collect on account of the adverse decisions of the courts. It is not considered that any allowance of credits further than this should be made.

Rehearing denied.