139 So.2d 822 (1962)
TOWN OF COUSHATTA et al., Plaintiffs-Appellants,
v.
VALLEY ELECTRIC MEMBERSHIP CORPORATION, Defendant-Appellant.
No. 9614.
Court of Appeal of Louisiana, Second Circuit.
November 22, 1961.
On Rehearing April 4, 1962.
*823 Bethard & Bethard, Coushatta, for plaintiffs-appellants.
*824 Watson, Williams & Brittain, Natchitoches, for defendant-appellant.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
Plaintiffs, by this action, seek to prohibit, by injunctive process, the defendant from constructing transmission lines and extending its electrical service within the corporate limits of the Town of Coushatta. Further relief is sought by requiring the removal of the lines, poles, meters, and other service connections already installed.
The judgment from which all parties suspensively appealed enjoined the defendant and those acting on its behalf from using transmission lines or wires and other equipment which cross or use the streets, road, and other public places in said town to supply electrical energy to any place or places inside the corporate limits that were not served by defendant at the time such place, places, or localities were included within the corporate limits of the town.
The plaintiffs are the Town of Coushatta, represented herein by its Mayor and Councilmen, W. L. Townsend, a citizen and taxpayer of the town, and the Central Louisiana Electric Company, Inc., which is presently furnishing, under the authority of a franchise granted by the town, electrical service to its inhabitants. The defendant is a Louisiana corporation engaged in the transmission and sale of electrical energy under the provisions of 7 U.S.C.A. § 901 et seq., relating to rural electrification.
The Town of Coushatta was incorporated by a special act of the Legislature, No. 29 of 1872.
Whether the area presently served with electricity by the defendant is within the corporate limits of the town depends upon its inclusion by an extension of the original corporate limits. The boundary has been extended on two occasions: (1) by ordinance of 1948 and (2) by an ordinance of 1956. By reason of the language employed in the latter ordinance, the question arose as to whether the location served by defendant was within the corporate limits. Through an erroneous description of the starting point and the first "call" in describing the corporate boundary as extended by the latter ordinance, it is contended by the defendant that the location of the boundary is impossible of ascertainment. We find the contention without merit. The designated point and "call" can be disregarded entirely as surplusage, whereupon the description of the boundary is clarified so as to be readily ascertained. When the "calls" of the description of the area included in the ordinance are taken and followed in reverse order, the boundary of the area ties in perfectly with the former boundary of the town. The starting point and "call" designated as superfluous are then found to be located entirely within the boundary of the town as enlarged by the ordinance.
The next concern is whether the property now being served by the defendant is within the corporate limits of the town as enlarged. The property owned by William Wren, consisting of a service station and a cafe, is located north of and adjacent to U. S. Highway 71. The property is described as a 1.62-acre lot located in the NE¼ of the NE¼, Section 19, and in the southeast portion of Section 37, or the Perrault Grant, all in Township 12 north, Range 9 west. This general description is followed by a more minute and detailed description which is unnecessary to recite. The ordinance extending the corporate boundary included the whole of the aforesaid Section 19 north of U. S. Highway 71, for the "call," after reciting that the line runs east along the north line of said section to the corner common to Sections 17, 18, 19, and 20, Township 12 north, Range 9 west; it then recites that the line runs along the east line of Section 19 to a point 240 feet south of the center line of U. S. Highways 71 and 84, thence west parallel with the center line of said highways to the then existing boundary *825 of the Town of Coushatta. That portion of the Wren property situated in Section 37 is farther west and therefore deeper inside the corporate boundary as enlarged.
No direct attack has been made upon the ordinances extending the corporate limits nor upon the boundaries extended. A collaterial attack, such as this proceeding envisions, is untenable. Moreover, following a 30-day period after the adoption of such ordinance, it cannot be contested nor attacked for any reason or cause whatsoever. LSA-R.S. 33:175.
A stipulation is contained in the record to the effect that the electrical meter serving Wren's property was originally located south of the north line of the aforesaid Section 19 and, therefore, within the corporate boundaries, as we have determined. The meter was moved after this suit was filed and is now located north of said section line and, therefore, outside of the town. The record further establishes that the line from the meter to Wren's property was paid for by him and not by the defendant.
The authority of the town to regulate the sale of electricity within its boundaries is questioned under the provisions of its charter or under the provisions of any other statute of the State, where the vendor does not use the streets, alleys, or public ways. The original charter has never been amended. The police power of the town, under its charter, encompasses the authority to prevent the stoppage or obstruction of the streets, roads, and other public places of the town, and to adopt and carry into effect such regulations for that purpose, and for the removal of all buildings, obstructions, and nuisances of whatever nature, and generally to make all ordinances and regulations such as they may deem necessary for the police and health of the town. Act 29 of 1872, § 13.
Therefore, obviously, there was no expressed authority conferred upon the town to regulate the sale of electricity. The authority, however, is implied. Lake Charles Ice, Light & W. W. Co. v. City of Lake Charles, 106 La. 65, 30 So. 289; Conery v. New Orleans Water-Works Co., 41 La.Ann. 910, 7 So. 8; New Orleans Gas-Light Co. v. City of New Orleans, 42 La.Ann. 188, 7 So. 559; City of Monroe v. Louisiana Public Service Com'n, 233 La. 478, 97 So.2d 56, 61-62.
In the Lake Charles case, it was stated [106 La. 65, 30 So. 291]:
"Recurring to the charter of 1867, and the powers delegated, the defendant urges that it embraced no power authorizing the municipality to make provision to supply the city with water and light. We agree with the statement that the power was not expressed, but we are decidedly of the opinion that it may fairly be implied that the municipality did not act beyond its powers in so far as it made suitable provision for lighting the streets and for supplying the public with water. These, in modern cities, have become essential improvements. Lights lessen the opportunity for committing crime, and go far towards preventing disorder. They assist the police authorities in enforcing the ordinances and laws, and afford, in many respects, better protection to the owners of property, and add enjoyment to life not felt in dark and gloomy streets, where lights are dim, and almost darkness prevails.
"The other claim is covered, we have seen, by a contract having in view the supply of water to the city, as important to the general welfare and interests as lights. It is directly conducive to good health, and to the preservation of property in the event of fire. The amount plaintiff seeks to recover is due for supplying wholesome water. The importance of such a supply, to the extent that it is needed, cannot be exaggerated. A municipality would fail of the purpose intended in its organization if it failed entirely *826 in taking such steps as are necessary to obtain enough water and sufficient light. They are intimately connected with its existence, if the purpose be to provide efficient systems when necessary in administering public affairs. There are decisions by this court and by the courts of sister states recognizing this important right of municipalities. We are not inclined to curtail a right as important and indispensable by deciding that express words must be used in order to warrant its exercise. It is sufficiently granted, in our view, if the corporation is invested with the powers contained in the charter before us for interpretation. We find ample support in the following decisions: Conery v. Waterworks Co., 41 La.Ann. 910 (922), 7 South. 8; New Orleans Gaslight Co. v. City of New Orleans, 42 La.Ann. 188, 7 South. 559." (Emphasis supplied.)
In the Conery case, the authority of the City of New Orleans to enter into a contract for the supply of water was challenged as being ultra vires, illegal, and unconstitutional in that the contract allegedly exceeded the limitations placed upon the city in the exercise of its police powers. In resolving the issues presented there, the court stated [41 La.Ann. 910, 7 So. 12]:
"* * * The city of New Orleans, by virtue of her inherent police powers, then, had a right to contract with reference to a water supply for the public health, and to extinguish fires; and, having the right, and having made the contract, her responsibility is to be measured like that of any individual in any civil or business corporation. * * * Her charter is silent as to any restriction. In it there is no regulation of any price as to the water to be supplied, nor is there any restriction as to the quantity or the character of the water. * * * And in the instant case the city of New Orleans had full power to contract, without restraint as to the price, quantity, or kind of water, and we are not disposed to question the administrative discretion vested in the city in this respect. * * * We are of the opinion that, independent of any statutory provision subsequently enacted authorizing the city to contract for her water supply, she had full and plenary power to do so under the provisions of her charter. * * *"
The Central Louisiana Electric Company, Inc., operating under a franchise is, and has been for several years, supplying the Town of Coushatta and its inhabitants with electricity. The grant of such franchise was, as we have endeavored to point out, within the implied powers of the municipality. Moreover, the authority is now expressed under the provisions of LSA-R.S. 33:4401, which reads as follows:
"The governing authorities of all municipalities with a population not exceeding twenty-five thousand may grant a franchise to any person to use and occupy the streets, alleys, and public places therein, and to obstruct the same or any part thereof, by constructing, maintaining, and operating (1) poles, wires, and appurtenances for telephone, telegraph, and electric transmission and distribution systems and (2) pipe-lines, mains for a gas transportation and distribution system. These franchises shall not be exclusive, nor be for a longer period than twenty-five years and shall be subject to any terms, conditions and stipulations prescribed by the governing authorities of the municipalities. This Section shall not apply to municipalities which are required under the provisions of their charter to hold referendum elections to grant or lease franchises."
The defendant contends that the franchise under which the Central Louisiana Electric Company, Inc., is operating in the Town of Coushatta is invalid and illegal. In general, the right to question the *827 validity of a franchise is in the sovereign authority, that is, the authority which granted the franchise. In this action, the grantor and the grantee of the franchise assert its validity. Also, as a general rule, persons other than the public authority granting the franchise may not assail its validity, at least in the absence of a showing that such persons have a peculiar or particular interest in the matter distinct from that of the citizens generally.
Nor may an attack upon the validity of a franchise be maintained in a collateral proceeding. These rules have particular application where the interested public authorities recognize the existence of the franchise and do not seek a forfeiture. 37 C.J.S. Franchises § 29, p. 191 et seq.
In this regard, it may be emphasized that the defendant does not claim to have been authorized by the town to serve electricity to any of the inhabitants of the municipality. As to the services being rendered which are herein concerned, such services are concededly being rendered without authority of the town. Therefore, defendant has no franchise or permit from the town to render such services. Hence, it has no particular or peculiar interest in assailing the validity of the grant of authority under which plaintiff, Central Louisiana Electric Company, Inc., is now serving electricity to the municipality and its inhabitants.
Under the provisions of the statute heretofore quoted, the franchise now held and exercised by the plaintiff, Central Louisiana Electric Company, Inc., is one of a nonexclusive type or character. Such franchises standing alone do not include the right to be free of competition, and such a grant does not prevent the granting of similar franchises to others. Nevertheless, such a franchise may be properly characterized as exclusive against one who carried on a competing operation without a franchise or without due authorization. The holder of a nonexclusive franchise, however, has the legal right to be free from the competition of one not having a valid franchise. This rule is recognized and applied in respect of a franchise to function as or a franchise granted to a public utility. 37 C.J.S. Franchises § 22, pp. 172-173.
An injunction is a proper remedy where the franchise of a corporation or its rights thereunder are being invaded. The right to an injunction extends not only to the actual, but also to threatened, interference with the rights conferred by the franchise. One whose franchise is not exclusive is not entitled to enjoin legitimate competition. However, a franchise, even though nonexclusive, is a valuable property right (23 Am.Jur., pp. 717-745, "Franchises," §§ 4-39) and the owner of a franchise, although not exclusive, is entitled to relief by way of an injunction against a threatened or actual injury to his property rights through illegal nonfranchise competition on the theory that the rights granted, although not exclusive, are actually so as to all others not having a similar franchise. Payne v. Jackson City Lines, 220 Miss. 180, 70 So.2d 520; McInnis v. Pace, 78 Miss. 550, 29 So. 835; Memphis Street Railway Company v. Rapid Transit Company, 133 Tenn. 99, 179 S.W. 635, L.R.A. 1916B, 1143; Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L. Ed. 483; 55 Am.Jur., p. 79, "Urban Transportation," § 71.
In Frost v. Corporation Commission, supra, the court stated [278 U.S. 515, 49 S.Ct. 237]:
"Appellant, having complied with all the provisions of the statute, acquired a right to operate a gin in the city of Durant by valid grant from the state acting through the corporation commission. While the right thus acquired does not preclude the state from making similar valid grants to others, it is, nevertheless, exclusive against any person attempting to operate a gin without obtaining a permit or, what amounts to the same thing, against one who attempts to do so under a *828 void permit, in either of which events the owner may resort to a court of equity to restrain the illegal operation upon the ground that such operation is an injurious invasion of his property rights. * * * The injury threatened by such an invasion is the impairment of the owner's business, for which there is no adequate remedy at law."
See, also, the authorities therein cited.
The defendant further contends that the extent of the authority conferred by the grant from the town for the transmission and sale of electricity was only as to the use of the streets, alleys, and other public places for the purpose of erecting and maintaining poles, transmission lines, meters, and similar equipment. Such a construction would be indeed a very narrow and limited interpretation upon the provisions of the grant. The object of the grant was to obtain, for the municipality and its inhabitants, an adequate, dependable supply of electricity. A grant, as a general rule, carries with it whatever is essential to its exercise or enjoyment. By implication, if not by expressed terms, the franchise herein concerned carried with it the authority to supply electricity to all the inhabitants of the town.
To permit one not authorized to enter into the town and serve only those of its own selection would result in confusion and in a degeneration in the character of services to be performed. One selecting the patrons he would serve would, no doubt, in the exercise of good judgment, select the most profitable and leave to the holder of a franchise, obligated to serve all impartially and indiscriminately, the unprofitable business. Inferior and unsatisfactory service, to the detriment of the town and its inhabitants and to the public in general, would be the inevitable result.
The municipality, of course, has the authority to grant other franchises if it deems such action would benefit the public. The town, however, has not seen fit, in the public interest and in the exercise of a discretion vested in it alone, to grant other franchises.
Therefore, the conclusion is inescapable that the defendant has no right or authority, without a franchise, to enter into and transmit and sell electricity to the inhabitants of the municipality. Moreover, the defendant without a franchise is clearly without right or authority to use, occupy, or obstruct the streets, alleys, or other public places within the corporate limits with its poles, transmission lines, meters, and other equipment. The town has the authority to pass such ordinances as may be necessary to protect the public from the indiscriminate use of the streets and public ways by those who would transmit and sell electricity without first having obtained a permit or franchise to do so.
The defendant would distinguish and exclude from this rule such present areas of the town as were served by it prior to their annexation and incorporation into the municipality. We find no merit in this contention. The defendant acted at its peril and under conditions it was bound to notice when it constructed its lines in an area adjacent to the municipality. In accordance with the history of the growth and expansion of towns and cities, the defendant knew that the area involved would likely be annexed to and become a part of the Town of Coushatta, and, in such event, any franchise holders would have the authority to supply electricity to the inhabitants of the area so annexed. Clearly, the town has a right to withhold a franchise from defendant even though it was operating in the area in question before it was annexed to the town. It is equally clear that the town has the exclusive control of the use of its streets and that an electric company does not have the right to use them to carry on the business of transmitting and selling electricity without first having obtained a franchise. Therefore, inasmuch as the defendant does not presently have a franchise *829 from the Town of Coushatta to carry on the business of transmitting and selling electricity within the corporate limits of that municipality, it is without right to do so therein. Moreover, the town is within its rights in seeking to prohibit such unauthorized activities.
Nor do we think the defendant can successfully circumvent the law and, by such action, acquire the right of a franchise holder by merely moving its meter beyond the corporate limits and continuing to serve electricity within the corporate limits of the town. As heretofore emphasized, the purpose of the franchise was not merely for the use of the streets and public ways of the town, but such rights were only in aid of the primary purpose of obtaining an adequate and dependable supply of electricity. Thus, defendant was without right or authority to distribute and sell electricity within the Town of Coushatta without a franchise.
Plaintiffs contend, however, that defendant should also be enjoined from selling electricity by virtue of the provisions of Title 7, U.S.C.A. § 901 et seq., relative to rural electrification because the municipality exceeds in population the maximum where such service is authorized. We pretermit a discussion and conclusion on this issue as unnecessary in view of the conclusions we have reached. We may observe, however, that doubt exists that plaintiffs are proper parties with such interest as would entitle them to urge this complaint.
Plaintiffs further contend that the defendant should be required and condemned to remove its transmission lines, poles, and other equipment from the area now served by it within the boundaries of the municipality. In the absence of a demand therefor and a placing of the defendant in default, this position appears untenable at the present time and plaintiffs' demands relative thereto should be nonsuited.
From our review of the record, we conclude (1) that the defendant is without right or interest to assail, or assert in validity of, the franchise whereby plaintiff, Central Louisiana Electric Company, Inc., is serving the Town of Coushatta and its inhabitants with electricity; (2) that the area presently served by the defendant and which forms a basis for this action is within the corporate limits of the Town of Coushatta; (3) that the defendant, having no franchise, is without authority to erect or maintain transmission lines, poles, meters, or other transmission equipment along, over, on, or across the streets, alleys, or other public places of the Town of Coushatta, or to use said streets and other public places to transmit or sell electricity within the corporate limits or boundaries of said town, or to transmit and sell electricity therein without a franchise or a permit from the town; (4) that the construction of transmission lines and equipment for the transmission and sale of electricity in an area subject to annexation by the town was dependent upon the exercise of the right and privilege of the town to annex said area; and (5) that defendant's rights to maintain its lines, poles, and other equipment in such areas is dependent upon a franchise or a permit from the town, but that the defendant, not having been requested to remove said equipment, has not been placed in default. Consequently, plaintiffs' rights in connection therewith should be nonsuited.
Whereupon, for the reasons assigned, the judgment appealed is hereby amended and recast to read as follows:
It is, therefore Ordered, Adjudged and Decreed there be judgment herein in favor of the plaintiffs, the Town of Coushatta, through its governing authority, the Mayor and Councilmen, the Central Louisiana Electric Company, Inc., and William L. Townsend, against the defendant, Valley Electric Membership Corporation, forever and permanently enjoining said defendant, its agents, employees, and all other persons, firms or corporations acting, or *830 claiming to act, in its behalf from erecting, constructing and extending electrical transmission lines and service into the corporate limits of the Town of Coushatta, and from supplying electricity or electrical energy to any persons, inhabitants, firms, places of business, or corporations within the corporate limits of the Town of Coushatta, particularly to the restaurant and place of business of William Wren.
It is further Ordered, Adjudged and Decreed that plaintiffs' rights and demands for a removal of the transmission lines, poles, meters, and other equipment of the defendant from the streets and alleys of the Town of Coushatta be, and they are hereby, reserved.
It is further Ordered, Adjudged and Decreed that the defendant pay all costs of this proceeding, including the cost of this appeal, and that the judgment, as amended and recast, be, and it is hereby, affirmed.
Amended and affirmed.

On Rehearing
BOLIN, Judge.
After the rendition of our original decree defendant-appellant made application for a rehearing, following which we were besieged with requests by amici curiae for permission to file briefs on behalf of numerous interested utility cooperatives. It seems the principal complaint with our decision is that we went too far. Of course, if we had not fully discussed all issues presented, we would undoubtedly have been accused of not going far enough, but because we do fully realize the great importance of this decision and the far reaching effect upon certain public utility companies operating within this State, we granted a rehearing so that we could re-examine the entire record.
The facts and issues of the case are outlined in detail in our original opinion and we will not burden this opinion by restating such details. We merely set forth the following pertinent sequence of events:
(a) In 1937 defendant was granted a franchise from Red River Parish Police Jury to construct electric lines, etc., in all of the Parish.
(b) Defendant-appellant constructed certain of its transmission lines in an area located near, but not actually inside, the incorporated limits of the Town of Coushatta.
(c) The Town of Coushatta, in the year 1956, extended its corporate limits to include property through which the defendant-appellant's transmission lines passed and on which they were located.
(d) In the year 1960, defendant-appellant without permission of the Town of Coushatta extended electric service from its existing facilities to the property of one William Wren which was located in the annexed area. This is the only person being serviced in this area.
As defendant-appellant had a valid franchise from the Police Jury at the time the area in question became a part of the Town of Coushatta by annexation, we now think our original opinion was in error in holding by dicta or otherwise that such a valuable property right could be taken without due process of law. (U.S.C.A.Const. Amendment 14; U.S.C.A.Const. art. 1, sec. 10; LSA-Const. art. 1, sec. 2). We feel we were in error in originally concluding that mere municipal annexation is such due process as intended by our Constitutions. It has been held a municipality may exercise its power of eminent domain for the purpose of acquiring any property or facilities which may be within such nearby annexed area; and that such property includes a utility franchise such as the one now under consideration. City of Thibodaux v. Louisiana Light and Power Co. (La.App. 1 Cir., 1960) 126 So.2d 24, cert. denied.
The City of Thibodaux v. Louisiana Light and Power Co. case, supra, has been *831 cited by both sides in this litigation. While the case may be distinguished factually from the instant case and while it also contains the usual amount of dicta, it does hold in no uncertain terms that a utility franchise obtained from a police jury is a valid property right and such is subject to expropriation under the power of eminent domain. The major question in that case was whether this franchise could be obtained by the harsh remedy of expropriation. The court seemed to have great difficulty concluding such could be done and we do not think this court is now justified in going further and holding the same results can be accomplished by the simple expedient of annexation. We have not been cited to any law that specifically so holds and we now adjudge that such an acquisition would be depriving this defendant of its property without due process of law contrary to the United States and Louisiana Constitutions.
We re-affirm our original holding that the annexed area was properly incorporated within the limits of the Town of Coushatta which had the effect of bringing the area within the territory covered by the previously granted franchise to Central Louisiana Electric Company.
The only real issue tendered to the lower court and to us on appeal is whether defendant should be enjoined from serving William Wren with electricity. Having concluded the area was within the area properly annexed to the Town of Coushatta, that the electrical connection in question was made subsequent to such date, and without permission of the municipality, it follows such action was unauthorized and should be enjoined. Perhaps we should now stop and not be guilty of again going too far, and we do pretermit any further judgment as to other rights flowing to defendant-appellant within the annexed area under its valid and prior existing franchise except as to our previous enunciation that such a franchise is a property right. As Wren is the only person being served in the disputed area, it would be pure speculation to conclude any further attempts would be made by defendants to service additional establishments. Even though, as pointed out in our original decree, injunctions lie to prohibit a threatened violation, there must be a real threat and not a mere possibility thereof.
For the reasons stated the judgment appealed from and our previous judgment is hereby set aside and same is now re-cast to read as follows:
It is, therefore, ordered, adjudged and decreed there be judgment herein in favor of the plaintiffs, the Town of Coushatta, through its governing authority, the Mayor and Councilmen, the Central Louisiana Electric Company, Inc., and William L. Townsend, against defendant, Valley Electric Membership Corporation, forever and permanently enjoining said defendant, its agents, employees, and all other persons, firms or corporations acting, or claiming to act, in its behalf from supplying electricity or electrical energy within the corporate limits of the Town of Coushatta to the restaurant and place of business of William Wren.
It is further ordered, adjudged and decreed that plaintiffs' rights and demands for a removal of its existing transmission lines, poles, meters, and other equipment of the defendant from the streets and alleys of the Town of Coushatta be, and they are hereby rejected.
It is further ordered, adjudged and decreed that the defendant pay all costs of this proceeding, including the cost of this appeal, and that the judgment, as amended and recast, be, and it is hereby, affirmed.
Amended and affirmed.
AYRES, J., concurs in that portion of the decree prohibiting and enjoining the defendant from supplying electricity or electrical services to the business of William Wren without a franchise from the Town of Coushatta, but otherwise dissents.