hJONES, Judge.
Defendani/appellant, Sewerage and Water Board of New Orleans (SWB), and Citizens Utilities Company (Citizens), appeal the trial court’s judgment granting the motion for summary judgment to Entergy New Orleans, Inc. (Entergy), formerly known as the New Orleans Public Service, Inc. The trial court found Entergy held an exclusive franchise agreement with the City of New Orleans (City), and that the contract between SWB and Citizens violated this agreement. We affirm.

STATEMENT OF FACTS

The SWB is an entity created by the city charter to oversee the operation of the public water, sewerage and drainage systems for the City. The SWB’s giant drainage pumps operate on electricity at 25 Hz. Because commercially available electricity is generated at 60 Hz, the SWB generates its own electricity at 25 Hz from its own power plants, which are operated by natural gas.
Entergy, a public utility company, currently provides all gas services to the inhabitants of the City pursuant to a franchise[1] agreement it has with the City ofjNew Orleans. More importantly, Entergy had and continues to have an obligation to provide natural gas service to SWB. Entergy’s obligation existed since the 1930s, and shall continue until another public utility company is granted a franchise by the City of New Orleans. Accordingly, any public utility company that is granted a franchise (i.e., Entergy) is required to pay franchise taxes to the City as consideration for the franchise. See LSA-R.S. 33:4405.
Notwithstanding the franchise agreement between the City and Entergy, SWB, on March 3, 1995, notified Entergy that it in *1014 tended to consider alternative contracts with other suppliers of natural gas in an attempt to obtain a low-cost supplier for its gas requirements. On August 17, 1995, SWB signed a service contract with Louisiana Gas Service Intrastate Company (LGSI), a subsidiary of Citizens Utilities Company[2] (Citizens), to supply SWB with the natural gas service it needed for SWB’s daily operations. The contract provided that the SWB would receive gas service from LGSI through existing pipelines located outside the City, and also through a pipeline to be constructed by LGSI within the City. The contract further provided that LGSI would design and construct an additional eight-inch diameter pipeline and associated facilities, plus a new pressure regulating station adjacent to SWB’s existing power plant in the City. According to the contract, approximately 3,500 feet of the proposed eight-inch pipeline, as well as natural gas pressure regulating facilities would be constructed within Orleans Parish. Moreover, the contract stated that the gas service was to begin no later than six months subsequent to the commencement of the pipeline construction.
[jOn December 22, 1995, Entergy filed its Petition for Injunctive Relief against SWB and Citizens/LGSI, praying that the district court restrain Citizens and LGSI from supplying natural gas to SWB. Entergy also requested that the trial court enjoin LSGI from constructing the pipeline and other related facilities in violation of Entergy’s franchise agreement, pending a hearing on the merits of the case. On January 8, 1996, Entergy’s petition for preliminary injunction was granted. Later, Entergy filed a motion for summary judgment requesting that the preliminary injunction issued by the trial court against SWB and Citizens on January 8, 1996 be made permanent. Following oral arguments on the issuance of the preliminary injunction, the district court found that no issue of material fact existed which would require a trial on the merits. Therefore, the trial court made the preliminary injunction permanent, and concluded that LSGI violated Entergy’s franchise agreement based upon the holding in Town of Coushatta v. Valley Electric Membership Corp., 139 So.2d 822, 827 (La.App. 2nd Cir.1961). From this ruling the SWB and Citizens appeal.

LSGI’S CLASSIFICATION AS A NON-UTILITY

SWB[3] argues that the trial court failed to address issues of material fact, specifically whether Citizens/LGSI, was a public utility[4] engaged in providing a utility service. In other words, SWB argues that because LGSI is not a utility, it was not subject to the franchise or regulatory control of the City Council of New Orleans. Therefore, the appellants argue that their agreement was not in violation of Entergy’s indeterminate permit (i.e., franchise).
^Entergy argues that the status of the competing company as it relates to its franchise rights is not relevant here. More importantly, Entergy argues the central issue is whether LSGI entered into a contract to duplicate the services Entergy was to provide to residents or agencies within the municipality covered under Entergy’s franchise agreement. Entergy contends that this is exactly what LSGI and SWB did in their August 17, 1995 contract; therefore, the trial court was correct in granting the motion for summary judgment. We agree.
The City Council for the City of New Orleans regulates Entergy’s rates and services, and is authorized to grant indeterminate permits (i.e., franchises) to public utility companies. See LSA-R.S. 33:4405; cf. City of Owensboro v. Cumberland Telephone & Telegraph Co., 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389 (1913). These permits “continue in force until such time as the city purchases the utility ... or until the permit is otherwise terminated according to law.” Id. Pur *1015 suant to the indeterminate permit issued by the City Council in September 2, 1922, En-tergy has the right and authority:
“...to acquire, manufacture, distribute, deliver and vend artificial and or natural gas in the City of New Orleans and to construct lay and maintain pipes, mains, conduits, man-holes, reducers and all other appurtenances and accessories in, across and through the streets, alleys, highways, squares, parks bridges and other public places in the City of New Orleans....”
Entergy’s agreement with the City is a “vested property interest,” which prohibits SWB, and other city agencies, from contracting with competing companies.
[A] franchise, even though nonexclusive, is a valuable property right and the owner of a franchise, although not exclusive, is entitled to relief by way of an injunction against a threatened or actual injury to his property rights through illegal non-franchise competition on the theory that the rights granted, although not ^exclusive, are actually so (sic) as to all others not having a similar franchise.

Town of Coushatta, supra at 827.

SWB’s argument that it is not a utility company, and therefore should not be viewed as a competitor as it relates to Entergy’s franchise agreement is without merit. Further, SWB cited several cases during oral arguments which define the term “public utility.” However, we find that the cases are immaterial, and not dispositive of the issue before this Court
In Cajun Electric Power Cooperative, Inc., et al. v. Louisiana Public Service Commission, 544 So.2d 362 (La.1989), cert. denied, 493 U.S. 991, 110 S.Ct. 538, 107 L.Ed.2d 536, a rural electrical cooperative sought declaratory judgment arguing that it was not subject to the jurisdiction of the Public Service Commission under Article IV, § 21(B) of the Louisiana Constitution. The Supreme Court discussed at length its definition of a “public utility,” but did not discuss franchise rights, franchise agreements or abuses of franchise agreements by the cooperatives. Therefore, the holding in Cajun is not relevant here.
In Gulf States Utilities Co. v. Louisiana Public Service Commission et al., 222 La. 132, 62 So.2d 250 (La.1952), a foreign public utility corporation applied to the Public Service Commission for a rate increase in the State of Louisiana. The Supreme Court evaluated the Commission’s computations regarding the rate increase, and discussed several factors it found to be dispositive of the issue. However, like Cajun, there was no discussion regarding franchise rights or franchise agreements. Accordingly, Gulf States is irrelevant to the present matter.
Finally, in State ex Rel. Guste v.Council of City of New Orleans, 309 So.2d 290 (La.1975), the Attorney General for the State of Louisiana filed suit on behalf feof disgruntled utilities customers who argued that the late charge billing practices for NOPSI [now En-tergy] were deceptive under the Unfair Trade Practices and Consumer Protection Law. The Supreme Court limited its focus to the Public Service Commission’s authority to review and regulate a utility company’s rate-making policy. Once again, none of the parties in Guste argued issues relevant to the case sub judice.
Thus, the appellants’ discussion of the above cases reveals only that the term “public utility” was relevant in determining whether the Public Service Commission or the Council of the City have the authority to regulate certain companies under the Louisiana Constitution. However, these cases provide no valuable insight into the matters before this Court.
Furthermore, SWB does not refer to any cases in support of its proposition that a non-utility, which is a non-holder of a franchise for a municipality, can provide service to the municipality without violating the franchise agreement another company has with that municipality. Therefore, adopting SWB’s reasoning would lead to the unusual result that the protective and exclusive effects of franchisee’s rights could be entirely dependent on a competitor’s classification as a public utility. Nevertheless, we agree with the holding in Tcrnm of Coushatta, and other related cases, which stand for the proposition that a non-holder of a franchise is prohibited from providing services to a municipality *1016 which issued a franchise to another entity, regardless of the alleged offender’s status as a “non-utility” company. See Town of Kinder v. Beauregard Elec. Co-op., Inc., 339 So.2d 891 (La.App. 3 Cir.1976).
Alternatively, SWB argues that Entergy itself periodically purchases power plant gas from LGSI to supply its own natural gas needs. In essence, SWB alleges frthat the contract between LGSI and Entergy is legally indistinguishable from the contract between LGSI and SWB. Such argument is unfounded and ignores the fact that Entergy, pursuant to its franchise agreement, has the right and authority “....to acquire, manufacture, distribute, deliver and vend artificial and or natural gas in the City of New Orleans.” Consequently, the issue of where or from whom Entergy secures its natural gas supply is irrelevant to the underlying issue of whether Entergy’s franchise rights have been violated.
Section 33:4405 of the Louisiana Revised Statutes provides in part:
The governing authority of every city having a population of one hundred thousand or more may grant indeterminate permits for the use of the streets and other public places in connection with the operation and maintenance of any public utility, which permit shall continue in force until such time as the city purchases ■the utility [ ... ] or until the permit is otherwise terminated according to law.
LSA-R.S. 33:4405 (emphasis added). During oral arguments, appellants argued that LSA-R.S. 33:4405 bars them from obtaining a franchise agreement because they are technically classified as a non-utility. Hence, they should therefore be allowed to circumvent Entergy’s franchise agreement, and contract with SWB for cheaper natural gas service. We disagree.
In order to examine the merit of appellants’ argument, we find it necessary to look to other relevant sections of the Revised Statutes for clarification. “Statutes must be interpreted in such a manner as to render their meaning rational, sensible and logical.” See LSA-R.S. 1:3; see also Vogt v. Board of Levee Com’rs, 95-1187 (La.App. 4 Cir. 9/4/96), 680 So.2d 149, 153. Laws are presumed to be passed with deliberation and with full ^knowledge of all existing ones on the same subject; and we have held that the legislature is presumed to act with full knowledge of well-settled principles of statutory construction. See Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184; see also Losabia v. Cypress Hosp., 619 So.2d 151, 154 (La.App. 3 Cir.1993), writ denied 625 So.2d 1047 (La.1993). Section 33:4401 provides:
The governing authorities of all municipalities may grant a franchise to any person to use and occupy the streets, alleys, and public places therein, and to obstruct the same or any part thereof, by constructing, maintaining, and operating [ ... ](2) pipelines, mains for a water or gas transportation and distribution system, (sic).
(Emphasis added). Whereas LSA-R.S.33:4405 limits the class eligible for indeterminate permits to “utilities,” LSA-R.S.33:4401 extends that privilege to “any person,” which would also include non-utilities. However, construing both statutes together, it is clear that in municipalities, like New Orleans, which “[has] a population of one hundred thousand or more,” LSA-R.S. 33:4405 would control. Thus, “the holder of a nonexclusive franchise [ ... ] has the legal right to be free from the competition of one not having a valid franchise.” Town of Cous-hatta, supra at 827. Therefore, once the governing authority for the municipality “having a population of one hundred thousand or more” grants a franchise pursuant to LSA-R.S. 33:4405, the non-utility is barred from servicing the area. Consequently, appellants’ argument that it should not be governed by LSA-R.S. 33:4405 cannot be reconciled with the inherent legislative intent in this statute.
A motion for summary judgment “should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” See LSA-C.C.P. 966(B); see also Marigny v. Allstate Ins. Co., 95-0952 (La.App. 4 Cir. 1/31/96), 667 So.2d b!229, writ denied, 96-0693 *1017 (La.4/26/96), 672 So.2d 910. “Appellate courts review summary judgment de novo, using the same criteria applied by the trial courts in determining whether summary judgment is appropriate.” Id. Having found that LGSI’s classification as a non-utility is not a material issue, we conclude that the trial court did not commit reversible error in granting the motion for summary judgment in favor of Entergy.

IRREPARABLE HARM

In its next assignment of error, appellants argue that the trial court committed reversible error in granting the motion for summary judgment. Particularly, SWB argues that Entergy has failed to specify the irreparable harm that it would suffer if the trial court did not make the injunction permanent. Thus, SWB contends the trial court erred in granting the motion for summary judgment, absent Entergy’s separate showing of irreparable harm. Therefore, SWB argues the permanent injunction and the granting of the motion for summary judgment should be reversed. We disagree.
Appellee has correctly argued that per se irreparable harm has occurred once the franchise was invaded by LSGI. See Frost v. Corporation Commission, 278 U.S. 515, 521, 49 S.Ct. 235, 73 L.Ed. 483 (1929). In other words, within the four corners of the franchise agreement is the franchisee’s right to provide service without fear of competition from other entities. Thus, the franchise is exclusive vis-á-vis franchise competitors. Therefore, the mere act of contracting by a third party to provide services already being provided by the franchisee is the harm, which the appellee seeks to remedy by seeking the permanent injunction. An injunction is a proper remedy where the franchises of a corporation or its rights thereunder are being invaded. Town of Coushatta, supra at 827. Though the hofranchise itself is nonexclusive, it is, nevertheless, a valuable property right. Id; cf. U.S. v. Slay, 717 F.Supp. 689 (E.D.Mo.1989)
Pursuant to its franchise agreement, En-tergy is the sole entity entitled to contract for natural gas services within the City of New Orleans. Once, SWB contracted with LSGI for natural gas service, the violation had occurred, and irreparable harm became evident.
Furthermore, assuming arguendo that the contract between LGSI and SWB for natural gas services does not constitute a violation of Entergy’s franchise agreement, Entergy is nevertheless still entitled to a permanent injunction under law. Article 3601 of the Louisiana Code of Civil Procedure provides:
“[a]n injunction shall issue in cases where irreparable injury, loss or damage may otherwise result to the applicant, or in other cases specifically provided by law.”
(Emphasis added). The plain meaning of the words “may otherwise result” suggests that the showing of irreparable harm is not imperative, but may occur if the injunction is not granted. “The right to an injunction extends not only to the actual, but also to a threatened interference with the rights conferred by the franchise.” Town of Coushatta, supra at 827. Moreover, considering that Entergy’s sales of natural gas to SWB comprise a majority of Entergy’s total sales, it can be inferred that financial harm to Enter-gy “may otherwise result” if LGSI’s contract with SWB is not enjoined.
Additionally, this Court in New Orleans Pub. Serv. v. City Council, 539 So.2d 891, 893 (La.App. 4 Cir.1989), discussed an exception to the required showing of irreparable harm under Article 3601.
This exception holds that when the plaintiff seeks to enjoin a course of action that is forbidden by law, an injunction may be issued without a showing ofjyirreparable harm. In delineating the exception, our courts have used very precise language: an injunction may issue against conduct which is ‘forbidden by law’ or ‘reprobated by law*. The conduct may not involve arguable violations of the law, but must involve a clear violation of the law.
Having found that LGSI’s status as a non-utility does not exclude it from coverage under Entergy’s franchise agreement, we conclude that the contract between LGSI and SWB for natural gas service was “clearly ‘forbidden by law’ so as to warrant the use of the stated exception to LSA-C.C.P. art. *1018 3601.” Id. Consequently, we hold that the trial court’s issuance of the permanent injunction, via summary judgment, was proper in light Entergy’s franchise agreement with the City.
Incidentally, Citizens’ argument that it will not be in violation of the franchise agreement because the pipeline will be placed outside of the Orleans Parish corporate boundaries is irrelevant. The fact remains that the natural gas service will be provided by LSGI to SWB in violation of the franchise.

DECREE

For the foregoing reasons, we affirm the judgment of the trial court in granting the motion for summary judgment in favor of Entergy. All costs are assessed to the appellants.

AFFIRMED.

. The term ''franchise” has been defined as a privilege granted by the government to a company or individual to transact a particular kind of business, as in the case of a privilege granted to a waterworks company to supply a municipality with water and to collect water rates for the use of the water supplied. See. Paul J. Garfield & Wallace F. Lovejoy, Public Utility Economics 28 (1964). See also CSL Utilities, Inc., v. Jennings Water, Inc., 16 F.3d 130, 135 (7th Cir.1993).

.Citizens Utilities Company operates an intrastate gas pipeline and a gas distribution system in various areas of the State of Louisiana, and is subject to the regulatory jurisdiction of the Louisiana. Public Service Commission. The powers of the Louisiana Public Service Commission are found in La. Const. Art. 4 § 21.

. All arguments presented by the Sewerage and Water Board (SWB), were joined by Citizens.

. See LSA-R.S. 45:1161.