815 So.2d 991 (2002)
GORDON'S CONSTRUCTION & LANDFILL, INC.
v.
IBERIA PARISH GOVERNMENT, the Legal Arm of the Parish of Iberia, a Political Subdivision of the State of Louisiana, Authorized to do business in the State of Louisiana, Will Langlinais, President of the Iberia Parish Council, and Tech Trans, Inc.
No. 01-1244.
Court of Appeal of Louisiana, Third Circuit.
February 6, 2002.
*992 Edward P. Landry, New Iberia, LA, Attorney for the Plaintiff/Appellant Gordon's Construction & Landfill, Inc.
J. Wayne Landry, New Iberia, LA, Attorney for the Defendant/Appellee Iberia Parish Government.
Court composed of NED E. DOUCET, JR., Chief Judge, HENRY L. YELVERTON, JIMMIE C. PETERS, Judges.
DOUCET, Chief Judge.
The Plaintiff, Gordon's Construction & Landfill, Inc., appeals a judgment of the district court finding that "the contract entered into on November 6, 2000 between Iberia Parish Government and Tech Trans, Inc. does not constitute an exclusive franchise and is thus not null and void as having been entered into in violation of the Louisiana Public Bid Law."
The Plaintiff, in its sole assignment of error, asserts that this ruling was erroneous. *993 We have thoroughly reviewed the record and find no legal or manifest error in the trial court's decision. We adopt the trial court's reasons for judgment as the opinion of this court:
This matter came before the Court on March 19, 2001, as an expedited ordinary proceeding as stipulated by counsel. The original petition filed prayed for an injunction prohibiting the execution of the contract involved in this matter, for a nullity of the contract, for damages and attorney fees.
Defendant, Iberia Parish Government, previously had entered into a contract for solid waste collection and disposal with BFI, and in 2000 sought a new contract to provide that service within the unincorporated areas of Iberia Parish. The Parish Government (Parish) authorized the Parish President (Mr. Will Langlinais) to issue a Request for Proposals (RFP) for residential solid waste collection and disposal and collection and processing of recyclable materials.
The first RFP, dated October 3, 2000, and was published October 7, 9 and 11, 2000. That RFP included an agreement to be executed by the successful proposer and the Parish, which included the following language:
"The Contractor is hereby granted the sole and exclusive franchise, license and privilege within the territorial jurisdiction of the Iberia Parish Government of Iberia Parish, Louisiana and shall furnish all personnel, labor, equipment, trucks, and all other items necessary to provide residential solid waste and recyclable collection, removal and disposal services in the Parish of Iberia, as specified, and to perform all of the work called for in accordance with the Contract Documents including the Advertisement for Proposals Instruction to Proposer's, General Conditions, General Specifications, Contractor's Proposal Form, Agreement, Amendments, and any on file in the office of the Iberia Parish Government, all of which are made a part hereof as fully as if set out herein and hereby become a part of these documents."
On October 19, 2000, the Parish issued Addendum No. 3 to the agreement which altered the above language of the agreement to read as follows:
"WITNESSETH, THAT in consideration of the covenants and agreements herein contained, to be performed by the parties hereto and of the payments hereinafter agreed to be made, it is mutually agreed as follows:
The agreement is for a non-exclusive franchise within the territorial jurisdiction of the Owner. The Contractor shall furnish all personnel, labor, equipment, trucks, and all other items necessary to provide residential solid waste and recyclable collection, removal and disposal services in the Parish of Iberia, as specified, and to perform all of the work called for in accordance with the Contract Documents including the Advertisement for Proposals Instruction to Proposer's, General Conditions, General Specifications, Contractor's Proposal Form, Agreement, Amendments and Addenda Nos. I through 3, on file in the office of the Owner, all of which are made a part hereof as fully as if set out herein and hereby become a part of these documents."
Proposals were opened and read on October 23, 2000, including those of Gordon's Construction & Landfill, Inc. (Gordon's) and Teche Trans, Inc. (Teche). Thereafter, the Parish awarded the contract to Teche, with the contract being *994 executed by the parties on November 6, 2000.
Gordon's filed suit on January 26, 2001, as aforesaid. For the purposes of the hearing on March 19, 2001, Gordon's contends that, notwithstanding the wording of Addendum No. 3, the Parish had, in fact, granted an exclusive franchise to Teche for the collection and disposal of solid waste in Iberia Parish in violation of La. Revised Statute 33:4169.1. That section provides the following:
§ 4169.1 Municipal and parish authority over collection and disposal of garbage and trash; franchising, permitting, and licensing; assessment and collection of service charge
A. The governing authority of every parish or municipality shall have the following powers:
(1) To engage in the collection and disposal of garbage and trash within its jurisdiction in cooperation with, or to the exclusion of, other garbage and trash collectors.
(2) To grant permits, licenses, exclusive or nonexclusive franchises, or any combination thereof to garbage and trash collectors and disposers. Any exclusive franchise shall be granted only after advertising for bids, reception of bids, and awarding of the contract or contracts in accordance with the public bid laws of the state and other provisions of law.
(3) To enter into time contracts for the collection and transportation of garbage or trash for a term of up to ten years, and for disposal of garbage or trash for a term of up to twenty-five years.
* * * * * *
(5) To otherwise regulate the collection and disposal of garbage and trash.
* * * * * *
The terms "exclusive franchise" and "non-exclusive franchise" are not defined in the statute. R.S. 33:4169.1 does not define which public bid law is to be followed in the case of an exclusive franchise, nor does it specify what "other provisions of law" are to be followed.
Gordon's argues that all residences in Iberia Parish are included in the contract and that consequently there can be no competition, thus granting an exclusive franchise to Teche. The fee basis set forth in the contract is the total number of residential units in the affected areas.
The Parish and Teche argue that the contract constitutes an exclusive contract authorizing only Teche to collect and dispose of solid waste in the affected areas on behalf of the Parish, but does not prohibit others from engaging in the same business, therefore no exclusive franchise is granted. They further argue that the Parish retains the right to control the stream of solid waste as well as to designate those residential units subject to the contract. The Parish further contends that even if the contract creates an exclusive franchise, requiring bidding in accordance with the public bid law, the Parish complied with the bid law.
Thus, the threshold issue to be decided by the Court is whether the RFP and contract awarded by the Parish to Teche pursuant thereto constitutes the granting of an exclusive franchise. If it does, the Parish was required to comply with the applicable public bid law. In that event, if it did not follow the public bid law, the contract would be a nullity. If the contract *995 does not constitute a grant of exclusive franchise, the issues presented by Plaintiff to the Court in the hearing held on March 19, 2001 will be dismissed, reserving to the Plaintiff any matters not resolved at that hearing.
It was stipulated by the parties that the revenue for payment of the garbage collection and disposal services was provided through a dedicated sales tax. This sales tax is paid by anyone who purchases any item in the Parish of Iberia, regardless of whether or not they live in the Parish and regardless of whether they take advantage of the garbage collection services provided in the Parish.
The court has read all exhibits introduced into evidence, and the memoranda submitted. For the reasons hereafter stated, the Court finds that the contract entered into on November 6, 2000 between the Parish and Teche does not constitute an exclusive franchise.
Initially, the Court notes that R.S. 33:4169.1 provides:
"A. The governing authority of every parish or municipality shall have the following powers:
(1) To engage in the collection and disposal of garbage and trash within its jurisdiction in cooperation with, or to the exclusion of, other garbage and trash collectors.
(2) To grant permits, licenses, exclusive or nonexclusive franchises, or any combination thereof to garbage and trash collectors and disposers. Any exclusive franchise shall be granted only after advertising for bids, reception of bids, and awarding of the contract or contracts in accordance with the public bid laws of the state and other provisions of law."
Corpus Juris Secundum defines a franchise as:
"In the strict and technical sense, a special privilege conferred by the government on a individual or individuals and which does not belong to the citizens of the country generally, of common right.
In some cases the word "franchise" has been used as referring to the grant, and has been defined briefly as a grant from the sovereign power, and, in greater detail, as a grant by the state to some person, natural [or] corporate, or some privilege or power, not common to the people generally, with respect to property or rights subject to the control of the state or of some agency of the state." 37 CJS, Franchises § 7, p. 133.
Webster's Third New International Dictionary, Unabridged defines "franchise" as:
"a right or privilege conferred by grant from a sovereign or a government and vested in an individual or a group; specif: a right to do business conferred by a government ... the right granted to an individual or group to market a company's goods or services in a particular territory ... a contract for public works or public services granted by a government to an individual or company ..."
and Merriam Webster defines "exclusive" as:
1 (a) excluding or having power to exclude (b) limiting or limited to possession, control, or use by a single individual or group, 2(a) excluding others from participation[.]
With the grant of an exclusive franchise, a public body cannot violate its agreement and grant a competing franchise to another corporation without compensating the owners of the first franchise. In effect, the grantor of an *996 exclusive franchise removes from itself the power and authority to grant similar rights to others or to permit others to engage in the same activity for which the exclusive franchise was awarded. A non-exclusive franchise does not include the right to be free of competition, and does not prevent the granting of a similar franchise to others. 36 Am Jur 2nd, Section 33 Franchises, pp. 756-757; Town of Coushatta Vs. Valley Electric Member[.] Corp., 139 So.2d 822 (1962).
Where the grant of a franchise is not exclusive, the public body is not precluded from granting a similar franchise, or from authorizing a similar activity which may greatly impair, or even totally destroy, the value of the former grant, and such damage is not a taking of the former franchise which entitled its owner to compensation. 36 Am Jur 2nd, § 32, Franchises, p. 757.
The general rule is that a claim that an exclusive franchise or privilege has been acquired is not regarded favorably, and that, in the absence of an express provision to that effect, grants of franchises are not construed to be grants of exclusive privileges: as sometimes stated, a grant in general terms does not confer exclusive privileges. So, as a general rule, an exclusive franchise does not arise by implication. 36 Am Jur 2nd, section 32, Franchises, pp. 754-755.
In this case, the original RFP specifically stated that the contract was to constitute an exclusive franchise, however by Addendum Number 3 it was specifically designated as non-exclusive. Despite the designation in the amended RFP and the finally executed document, the Court must look also to the terms and conditions of the contract to determine if, in fact, an exclusive franchise was granted.
General Condition 00700.13 B(4) Waste Stream Control, reserves to the Parish the right to redirect all or part of the residential solid waste and/or recyclable materials collected under the contract to a disposal or processing facility of its choosing, including the right to entirely eliminate recycling services provided for in the contract. The Parish, therefore, reserved the right to remove recycling services from the agreement.
General Condition 00700.14, Article 12 grants the non-exclusive franchise to collect solid waste and recyclable materials on behalf of the Parish to the designated residential units for which the Parish acts as agent. There is no definition of "residential units for which the [Owner] is acting as agent," nor does that section require the Parish to designate all residential units as included in the contract.
General Condition 00700.16, Article 16 deals with newly developed areas of the Parish. Those areas are covered by the contract, but only after "proper notification by the Owner (Parish). Such notification by the Parish is required in order for the contractor to be paid for services to that area." Under the terms of the contract, although the Contractor has an obligation to serve newly developed areas if requested by the Parish, there is no corresponding obligation of the Parish to request service to newly developed areas and conceivably another contract could be entered into to provide service to these areas.
General Condition 00700-13, Article 9, Subsection C provides "The Contractor shall discontinue solid waste collection service at any service unit as set forth in a written notice sent to it by the Iberia Parish Government...."
General Condition 00700-13, Article 9, Subsection D provides "The Contractor shall bill the Iberia Parish Government *997 for service rendered to residential units within ten (10) days following the end of the month ..."
In looking at these provisions, it is clear that the Parish has the right to designate the areas to be served and also has the right to instruct the Contractor to discontinue solid waste collection at any service unit. Although the method for billing is based on residential units approximated in the contract, the Contractor had an obligation to determine through ... its own "investigations as they consider necessary to determine the actual number of residential and participating light commercial units" in the program area. After award of the contract, there was to be a joint house count to determine the number of residential units to be used for billing purposes and either the Parish or the Contractor could request subsequent house counts to confirm the number of units billed. See INSTRUCTIONS TO PROPOSERS 00090-4 ARTICLE 16.
Further, the contract provides that if annexation by a municipality occurs, the Contractor is to stop service to the area upon receiving proper notification from the Iberia Parish Government. See GENERAL CONDITIONS 00700-18, ARTICLE 20. If an exclusive franchise had been granted by the Parish, the Contractor could not be forced to relinquish service upon annexation. See Valley Electric Membership Corporation v. Southwestern Electric Power Co., 550 So.2d 702 (La.App. 2d Cir.1989).
All of these provisions convince the Court that the contract is non-exclusive. The Court therefore finds that the contract in question does not constitute an exclusive franchise and thus the Parish was not required to comply with the public bid law. All other issues regarding whether the procedure used by the Parish was in compliance with the public bid law are moot.
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the Plaintiff/Appellant, Gordon's Construction & Landfill, Inc.
AFFIRMED.