Dear Mr. Castille:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. You have asked for our opinion on matters related to a certain solid waste removal contract executed by and between BFI Waste Services, LLC, d/b/a Allied Waste Services of Acadiana ("Allied Waste") and the Lafayette City-Parish Consolidated Government ("LCG"). Specifically, you ask whether the subject contract violates The Americans with Disabilities Act and Louisiana's Public Bid Law, La.Rev.Stat. 38:2211 et seq.
La.Rev.Stat. 33:4169.1 gives municipalities and parishes the specific authority to address the collection and disposal of garbage and trash. The statute provides, in pertinent part, the following:
 § 4169.1. Municipal and parish authority over collection and disposal of garbage and trash; franchising, permitting, and licensing; assessment and collection of service charge
 A. The governing authority of every parish or municipality shall have the following powers:
 (1) To engage in the collection and disposal of garbage and trash within its jurisdiction in cooperation with, or to the exclusion of, other garbage and trash collectors.
 (2) To grant permits, licenses, exclusive or nonexclusive franchises, or any combination thereof to garbage and trash collectors and disposers. Any exclusive franchise shall be granted only after advertising for bids, reception of bids, and awarding of the contract or contracts in accordance with the public bid laws of the state and other provisions of law. *Page 2 
 (3) To enter into time contracts for the collection and transportation of garbage or trash for a term of up to ten years, and for disposal of garbage or trash for a term of up to twenty-five years.
 (4) To assess a service charge against any person provided any service pursuant to Paragraphs (1) or (2). However, in the parishes of Lafourche, Vermilion, Rapides, and Washington, such charge shall be imposed only after the question of its imposition has been submitted to the qualified electors of the parish at an election to be conducted in accordance with the general election laws of the state, and a majority of those voting in the election shall have voted in favor of the imposition of the charge.
 (5) To otherwise regulate the collection and disposal of garbage and trash.
 * * *
Our office has interpreted or otherwise referenced this statute on a number of prior occasions. For example, in Attorney General Opinion No. 03-0374 the Natchitoches Parish Police Jury asked for our opinion regarding the applicability of Louisiana's Public Bid Law to a proposed contract for the collection, transportation and disposal of solid waste. There, we stated the following:
 Under the Public Bid Law, contracts for public works projects costing $100,000 or more must be advertised and let by contract to the lowest responsible and responsive bidder. Public works means the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity. LSA-R.S. 38:2212(1)(a) (d) and 38:2211(11).
 Contracts for the purchase of material and supplies exceeding $20,000 must be advertised and let by contract to the lowest responsible and responsive bidder. Contracts for purchases of materials and supplies costing $10,00 or more, but less than $20,000, must be made by obtaining no fewer than three telephone or fax quotations on the same specifications for the desired purchase. R.S. 38:2212.1A(1)(a) (b). There are no provisions which set forth procurement requirements for smaller purchases.
 While the Board is subject to the Louisiana Public Bid Law when contracting for public works or the purchase of materials and supplies, our courts have held that contracts for services, professional or otherwise, are not subject to the requirements of that statute. Lafourche Parish Water District No. 1 v. Carl Heck Engineers, Inc. (La.App. 1st Cir. 1977) 346 So.2d 769; BFI, Inc. v. City of Monroe
(La.App. 2d Cir. 1985) 465 So.2d 882. *Page 3 
 Our office has previously opined that a non-exclusive contract for collection, transportation or disposal of garbage is a service and may be negotiated rather than awarded by public bid. Attorney General Opinion Nos. 97-239, 97-205 and 96-130 are enclosed for your review.
Similarly, in Attorney General Opinion No. 97-239 the Evangeline Parish Solid Waste Commission asked for our opinion as to whether it had the authority to negotiate and/or re-negotiate their contract for collection of solid waste without seeking bids for the award of such contract. In our response, we referenced Attorney General Opinion No. 94-108 and concluded that unless such contracts are structured as exclusive franchises, they may be awarded by negotiation rather than by a public bid process. In accord are Attorney General Opinion No. 97-205 (opining that only "exclusive franchises" for garbage collection must be bid in accordance with the public bid law) and Attorney General Opinion No. 89-37-A (opining that an exclusive franchise for the collection of residential garbage must be awarded in accordance with public bid law).
Thus, following the specific language of La.Rev.Stat. 33:4169.1 and the prior opinions of this office, if the contract executed by and between Allied Waste Services and the LCG is a "non-exclusive franchise", then such a contract may be negotiated rather than awarded by public bid. If the contract in question is an "exclusive franchise," then the contract must be awarded in accordance with the public bid law.
The terms "exclusive franchise" and "non-exclusive franchise" are not defined by La.Rev.Stat. 33:4169.1. Further, La.Rev.Stat. 33:4169.1 does not define which public bid law is to be followed in the case of an exclusive franchise, nor does it specify what "other provisions of law" are to be followed. Notwithstanding, the Louisiana Third Circuit Court of Appeal decision in Gordon Construction Landfill, Inc. v. IberiaParish Government, 2001-1244 (La. App. 3 Cir. 2/6/02), 815 So.2d 991, does provide some guidance on the meaning of these terms.
In Gordon Construction Landfill, Inc., supra, the plaintiff filed suit against the Iberia Parish Government challenging the award of a waste collection contract. The Trial Court found that the subject contract did not constitute an "exclusive franchise", and therefore was not void as having been entered into in violation of the public bid law. On appeal, the Louisiana Third Circuit Court of Appeal stated the following:
 . . . the threshold issue to be decided by the Court is whether the RFP and contract awarded by the Parish to Teche pursuant thereto constitutes the granting of an exclusive franchise. If it does, the Parish was required to comply with the applicable public bid law. In that event, if it did not follow the public bid law, the contract would be a nullity. If the contract does not constitute a grant of exclusive franchise, the issues presented by Plaintiff to the Court in the hearing held on March 19, 2001 will be dismissed . . . *Page 4 
The Third Circuit went on to reference La.Rev.Stat. 33:4169.1 and further attempted to assign meaning to the words "exclusive" and "franchise." The Court stated the following:
 Corpus Juris Secundum defines a franchise as:
 In the strict and technical sense, a special privilege conferred by the government on a individual or individuals and which does not belong to the citizens of the country generally, of common right. In some cases the word franchise has been used as referring to the grant, and has been defined briefly as a grant from the sovereign power, and, in greater detail, as a grant by the state to some person, natural [or] corporate, or some privilege or power, not common to the people generally, with respect to property or rights subject to the control of the state or of some agency of the state. 37 CJS, Franchises § 7, p. 133.
 Webster's Third New International Dictionary, Unabridged defines franchise as:
 a right or privilege conferred by grant from a sovereign or a government and vested in an individual or a group; specif: a right to do business conferred by a government . . . the right granted to an individual or group to market a company's goods or services in a particular territory . . . a contract for public works or public services granted by a government to an individual or company . . .
 and Merriam Webster defines exclusive as:
 1 (a) excluding or having power to exclude (b) limiting or limited to possession, control, or use by a single individual or group, 2(a) excluding others from participation . . .
 Gordon Construction Landfill, Inc., 815 So.2d at 995.
The Third Circuit stated further:
 With the grant of an exclusive franchise, a public body cannot violate its agreement and grant a competing franchise to another corporation without compensating the owners of the first franchise. In effect, the grantor of an exclusive franchise removes from itself the power and authority to grant similar rights to others or to permit others to engage in the same activity for which the exclusive franchise was awarded. A non-exclusive franchise does not include the right to be free of competition, and does not prevent the granting of a similar franchise to others. *Page 5 
36 Am Jur 2nd, Section 33 Franchises, pp. 756-757; Town of Coushatta Vs. Valley Electric Member[.] Corp., 139 So.2d 822 (1962).
 Where the grant of a franchise is not exclusive, the public body is not precluded from granting a similar franchise, or from authorizing a similar activity which may greatly impair, or even totally destroy, the value of the former grant, and such damage is not a taking of the former franchise which entitled its owner to compensation. 36 Am Jur 2nd, § 32, Franchises, p. 757.
 The general rule is that a claim that an exclusive franchise or privilege has been acquired is not regarded favorably, and that, in the absence of an express provision to that effect, grants of franchises are not construed to be grants of exclusive privileges: as sometimes stated, a grant in general terms does not confer exclusive privileges. So, as a general rule, an exclusive franchise does not arise by implication. 36 Am Jur 2nd, section 32, Franchises, pp. 754-755.
 Gordon Construction Landfill, Inc., 815 So.2d at 995,996.
Turning attention now to the contract by and between Allied Waste and the LCG, Section (1) of the contract specifically provides that: "contractor is hereby granted the non-exclusive franchise, license and privilege within the territorial jurisdiction of LCG and shall furnish all personnel, labor, equipment, trucks, and all other items necessary to collect waste materials during the term of this Contract . . ." Further, Section 13.0 of the contract is entitled "Non-Exclusive Contract" and states the following:
 "Contractor shall have a non-exclusive franchise, license and privilege to provide Waste Material Collection and Disposal services within the corporate limits for and on behalf of LCG to the designated Residential Units covered by this Contract."
Our reading of the contract in question fails to reveal any language that specifically precludes the LCG from granting a competing franchise or awarding a similar, competing contract for the collection and disposal of solid waste. On the contrary, it appears that the LCG has attempted to specifically reserve for itself the right to grant a competing contract for waste collection and disposal by including language and references to the term "non-exclusive franchise". Accordingly, since there is no express provision granting an exclusive franchise, and since exclusive franchises are not regarded favorably and do not rise by implication, we are of the opinion that the subject contract by and between Allied Waste and the LCG is a "non-exclusive franchise". As such, pursuant to La.Rev.Stat. 33:4169.1, the contract may be negotiated and does not have to be competitively bid. *Page 6 
With respect to your question regarding The Americans with Disabilities Act, please note that our office is not in a position to address such matters since it involves federal legislation. The Attorney General's Office does not render opinions on federal law.
We trust this adequately responds to your request. If you should have any questions about the response contained herein, please feel free to contact our office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY: __________________________
 MICHAEL J. VALLAN
 Assistant Attorney General
 JDC/MJV/crt
 cc: Mr. Pat Ottinger, Attorney at Law